(September 12, 1991)

■ ZOHRA-GEORGETTE ELKAIM, Respondent-Appellant, v PROSPER-PAUL ELKAIM, Appellant-Respondent. ZOHRA-GEORGETTE ELKAIM, Respondent-Appellant, v PROSPER-PAUL ELKAIM et al., Appellants-Respondents.—Judgment, Supreme Court, New York County (Walter Schackman, J.), entered October 31, 1990, which, inter alia, granted a divorce and distributed marital property, unanimously modified, on the law and the facts, to provide in the eleventh decretal paragraph that plaintiff is the owner of 25% of the shares of stock in Urban Vita Group, S.A., and to provide that plaintiff be awarded one

half of the net income of 864 Broadway Corp. and Momart Discount Stores, Ltd. from the date of abandonment until the date of judgment, and one half of the fair market rental value of the apartment resided in by defendant during this period, and the matter remanded to the trial court for a finding as to the latter amounts in accordance with this memorandum, and is otherwise affirmed, without costs.

No error was committed by the trial court in admitting into evidence, without foundation testimony, records of defendant-husband's accounts in European banks. To be sure, "[b]usiness records are not self-proving" (5 Weinstein-Korn-Miller, NY Civ Prac ¶ 4518.18), and "are customarily offered through a custodian or employee" of the business organization that created them (*People v Kennedy,* 68 NY2d 569, 577), "who can explain the record-keeping of his organization" (5 Weinstein-Korn-Miller, *op. cit.*); but, it is also true "that judicial notice can provide a foundation for admitting the records of a particular business" (*ibid.*) when the records "are so patently trustworthy as to be self-authenticating" (*People v Kennedy, supra,* at 577, n 4), or, as one commentator has said about the similar Federal business records rule, "[a] foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court, particularly in the case of bank and similar statements." (4 Weinstein, Evidence, at 803-178; *see also, Federal Deposit Ins. Corp. v Staudinger,* 797 F2d 908, 910.) Here, the bank records were procured by defendant himself (under compulsion of a court order) from the banks which supposedly created them, and thus their authenticity cannot be seriously challenged, and indeed is not challenged. They appear regular on their face, and in format conform to the type of statements with which banks customarily supply their customers on a monthly basis for the purpose of advising them of deposits, withdrawals and balances. No reasons are offered by defendant why these records should not be viewed as reliable and trustworthy, other than that they are technically hearsay and that no witness was called to testify that they were made in the regular course of the banks' business at or about the time of the transactions they describe, but, in the circumstances, we do not consider this reason enough to exclude what appears to be perfectly trustworthy evidence.

Nor is there merit to defendant's argument that the court double and triple counted the money in these bank accounts. If, as he asserts, the $300,000 he admittedly gave his son and the $400,000 he admittedly lent to his brother-in-law, moneys

on which the court imposed a constructive trust, had their source in these bank accounts, a fair allocation of the burden of proof would require him to show as much. Certainly, there is nothing in the bank records themselves to corroborate the alleged withdrawals. Similarly, with respect to Urban Vita, the foreign corporation on which the court imposed a constructive trust, the record is simply insufficient to require a finding that defendant's interest therein had its source in the foreign bank accounts.

We also find that plaintiff is entitled to a 50% share of the net income derived during the period from the date of abandonment until the date of judgment from the Manhattan real estate held by two corporations, *i.e.*, 864 Broadway Corp. and Momart Discount Stores, Ltd. We reject defendant's claim that the amount he paid plaintiff in maintenance *pendente lite* over these years should be deducted from her share of that income. Maintenance payments are to be paid from defendant's income, not from income that rightfully should have been paid independently to plaintiff. While plaintiff claims that the amount she is due is $750,000, the record is unclear as to the actual amount of such income and we therefore remand to the trial court for a finding on this issue. In light of defendant's history throughout this litigation of seeking to frustrate the ascertainment of the value of the various holdings constituting marital property and the allegations of possible tax fraud on his part, reliance solely on the documents prepared by him as the basis for a determination of the amount of that rental income would be inappropriate.

We note that while the aggregate corporate income must be computed from the corporations' net income, rather than gross income, the compensation which was reportedly paid to defendant as a corporate officer and deducted from taxable income appears to have been excessive. If so, any excess over reasonable compensation should be included in the corporate net income. Furthermore, plaintiff should also receive one half of the fair market rental value of the apartment which defendant occupied rent free during this period. We therefore remand to the trial court for a finding as to the net income of 864 Broadway Corp. and Momart Discount Stores, Ltd., and the fair market rental value of defendant's apartment, from the date of abandonment until the date of judgment and an award to plaintiff of half of the total amount.

The eleventh decretal paragraph of the judgment, indicating that plaintiff is to have a 50% share of Urban Vita, is amended to indicate that she receive a 25% share, consistent

with the sixteenth decretal paragraph and the underlying memorandum decision.

Except as indicated above, the distribution of those assets determined to be marital property was a proper exercise of the trial court's broad discretion in making equitable distributions of marital property *(Lydick v Lydick,* 130 AD2d 915, *lv denied,* 70 NY2d 607). The remaining assets were properly held the subject of a constructive trust as a remedy to defendant's effort to place marital property out of plaintiff's reach *(see, e.g., Coco v Coco,* 107 AD2d 21; *Reiner v Reiner,* 100 AD2d 872).

We have reviewed the remaining contentions of the parties, and find them to be without merit. Concur—Sullivan, J. P., Carro, Ellerin, Wallach and Ross, JJ.