# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**929**
**CAF 12-01287**
PRESENT: SCUDDER, P.J., CENTRA, LINDLEY, AND WHALEN, JJ.

---

IN THE MATTER OF KADYN J. AND LEXIE J.
-------------------------------------------
ERIE COUNTY DEPARTMENT OF SOCIAL SERVICES,
PETITIONER-RESPONDENT;

MEMORANDUM AND ORDER

KELLY M.H., RESPONDENT-APPELLANT.

---

DENIS A. KITCHEN, JR., WILLIAMSVILLE, FOR RESPONDENT-APPELLANT.

JOSEPH T. JARZEMBEK, BUFFALO, FOR PETITIONER-RESPONDENT.

DAVID C. SCHOPP, ATTORNEY FOR THE CHILDREN, THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (CHARLES D. HALVORSEN OF COUNSEL).

---

Appeal from an order of the Family Court, Erie County (Sharon M. LoVallo, J.), entered July 2, 2012 in a proceeding pursuant to Family Court Act article 10. The order adjudged that respondent had neglected the subject children.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: Respondent mother appeals from an order of fact-finding adjudging that she neglected the two children who are the subject of this proceeding. The mother correctly contends that Family Court erred in admitting police records in evidence inasmuch as the certification attached to those records failed to comply with Family Court Act § 1046 (a) (iv). That statute provides that where, as here, a certification is completed by a "responsible employee" rather than the head of an agency, the certification "***shall*** be accompanied by a photocopy of a delegation of authority signed by both the head of the . . . agency and by such other employee" (emphasis added). The language of the statute is mandatory, and it is undisputed that "the requisite delegation of authority to [the employee] was lacking" (*Matter of John QQ.*, 19 AD3d 754, 755). We must therefore "find the admission of these records to have been in error if we are to give effect to the clear and unambiguous intention of the [l]egislature" (*id.* at 755-756; *cf. Elkaim v Elkaim*, 176 AD2d 116, 117, *lv dismissed* 78 NY2d 1072; *see generally* McKinney's Cons Laws of NY, Book 1, Statutes §§ 76, 92).

Contrary to the mother's further contention, however, we nevertheless conclude that the finding of neglect is supported by a preponderance of the credible evidence. While the petition alleged

numerous acts of neglect, we address only the issues related to domestic violence.  "To establish neglect, . . . petitioner must demonstrate by a preponderance of the evidence 'first, that [the] child[ren]'s physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child[ren] is a consequence of the failure of the parent . . . to exercise a minimum degree of care in providing the child with proper supervision or guardianship' . . . Although the 'exposure of the child[ren] to domestic violence . . . may form the basis for a finding of neglect' . . . , 'exposing . . . child[ren] to domestic violence is *not* presumptively neglectful.  Not [all] child[ren] exposed to domestic violence [are] at risk of impairment' " (*Matter of Ilona H. [Elton H.]*, 93 AD3d 1165, 1166; *see generally Nicholson v Scoppetta*, 3 NY3d 357, 368).

The evidence presented at trial established that police officers had been called to the mother's residence on numerous occasions for disturbances and repeated acts of domestic violence.  The subject children, who were eight and nine years old, were present in the very small apartment for many of those incidents.  On the most recent occasion, the police responded to the apartment and observed wet blood in the common hallway of the dwelling that "looked like a trail" leading toward the mother's apartment.  Inside that apartment, there was a "huge puddle" of blood, and the responding officers observed a man, previously identified as the mother's boyfriend, with a cloth covering his bloody arm.  The mother was not injured, and the officers recovered a hunting knife covered with "fresh blood" near a window.  Based on his observations of their behavior and the empty beer cans in the kitchen, the police officer who testified at the hearing opined that the mother and her boyfriend were both intoxicated.  The children were in one of the two bedrooms with the door open, and the police officer testified that they had their eyes open and were watching television.  The mother was arrested and taken into police custody.

A caseworker who interviewed the children on two separate occasions testified that, although they stated that they slept through the entire incident, the children were traumatized by seeing the copious amount of blood and by being forced to clean it up the next day.  The children informed the caseworker that they had observed other acts of violence between the mother and her boyfriend.  We note that, inasmuch as the mother declined to testify, "the court [was] permitted to draw the strongest possible negative inference" against her (*Matter of Jasmine A.*, 18 AD3d 546, 548; *see Matter of Kennedie M. [Douglas M.]*, 89 AD3d 1544, 1545, *lv denied* 18 NY3d 808).

In our view, the testimony at the hearing was sufficient to establish first, that the children's emotional and mental conditions had already been impaired or, at the very least, were in imminent danger of becoming impaired due to the repeated acts of violence in the household that "occasionally occurred in the presence of the subject children" (*Kennedie M.*, 89 AD3d at 1545); and second, "that the actual or threatened harm to the child[ren] [was] a consequence of the failure of [the mother] to exercise a minimum degree of care in providing the child[ren] with proper supervision or guardianship"

(*Nicholson*, 3 NY3d at 368).  We thus conclude that the evidence established that the children were in fact neglected and that the mother, who was the "instigator of [the] physical altercation with [the boyfriend]" (*Matter of Richard T.*, 12 AD3d 986, 987), was "responsible for [that] neglect" (*Nicholson*, 3 NY3d at 368; *cf. Matter of Ravern H.*, 15 AD3d 991, 992, *lv denied* 4 NY3d 709).  Based on our determination, we see no need to address the mother's additional challenges to the finding of neglect.

Finally, the mother contends that the court erred in awarding temporary custody of the children to their half-sister over the mother's objection (*see generally* Family Ct Act § 1017).  In their briefs, petitioner and the Attorney for the Children state that, subsequent to the filing of this appeal, the mother consented to an order continuing custody of the children with their half-sister.  The mother has not disputed that fact, and the subsequent order "is a matter of public record of which we may take judicial notice" (*Matter of Chloe Q. [Dawn Q.- Jason Q.]*, 68 AD3d 1370, 1371; *see Matter of Sharon D.*, 274 AD2d 702, 703).  Consequently, the mother's contention is moot (*see Chloe Q.*, 68 AD3d at 1371; *Matter of Catherine W. v Donald W.*, 166 AD2d 651, 651).  In any event, we reject the mother's contention on the merits (*see Matter of Gabriel James Mc.*, 60 AD3d 1066, 1067).

Entered:  September 27, 2013                    Frances E. Cafarell
                                                Clerk of the Court