Ling-Cohan, J.
(dissenting). I respectfully dissent and vote to reverse the order appealed from, in which the court sua sponte granted plaintiff’s motion for summary judgment, on plaintiff’s second cause of action for an account stated—relief not sought by plaintiff in its motion. Based upon the moving papers, due process requirements, the rules of evidence, well-settled principles governing motions for summary judgment *78 and fundamental fairness, plaintiff’s motion for summary judgment should have been denied.[1]
Lack of Notice
Significantly, as the majority acknowledges, the relief ultimately granted by the lower court in this consumer debt action was not even requested by plaintiff in its moving papers. Plaintiff’s notice of motion for summary judgment merely indicates that the action is one for “breach of contract” and the supporting affirmation (in its first paragraph), clearly particularizes the relief being sought in the motion, stating that plaintiff was only seeking summary judgment as to plaintiff’s first cause of action, breach of contract.[2] Thus, the lower court erred by sua sponte granting summary judgment as to a different cause of action (for an account stated)—relief which was not even sought by plaintiff/movant. Consequently, defendant, the non-moving party, was deprived of her right to proper notice and procedural due process. (See Silverstein v Minkin, 49 NY2d 260 [1980].) Contrary to the majority’s assertion that defendant failed to argue below “that she was prejudiced in any way by [the] consideration of the account stated cause of action,” defendant specifically indicated in her memorandum of law submitted in opposition to plaintiff’s motion that, while “[t]he complaint asserts a cause of action for account stated as well as breach of contract . . . the present motion seeks summary judgment only on the latter claim [for breach of contract]” (defendant’s mem of law n l).[3] Thus, defendant was indeed *79 prejudiced by the sua sponte consideration of the account stated cause of action in that, as plainly indicated in her submissions, defendant intentionally focused her opposition on the breach of contract claim and was not given a full opportunity to muster her proof, due to the absence in the moving papers that such relief based on account stated was being requested. Therefore, “any mistakes or omissions in the notice of motion” were not “mere irregularities,” as explained by the majority. Rather, defendant lost her day in court and was deprived of a trial due to lack of notice by plaintiff/movant, and the sua sponte granting of summary judgment based on a different cause of action.[4]
Movant’s Burden of Proof
Nevertheless, even if the lower court was permitted to overlook such “mistakes or omissions” in the moving papers, which deprived defendant of notice, as the majority has chosen to do by characterizing these infirmities as “mere irregularities,” plaintiff failed to make a sufficient evidentiary showing of entitlement to judgment as a matter of law, on its account stated cause of action, by the submission of admissible evidence.
It is axiomatic that the movant on a motion for summary judgment has the initial burden to tender evidentiary proof in admissible form, sufficient to warrant that the court direct judgment in its favor as a matter of law. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985].) Thus, a movant’s failure to make a prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers. (Id. at 853.)
*80 Additionally, CPLR 3212 (b) provides that summary judgment motions must be supported by an affidavit of “a person having knowledge of the facts.” A conclusory affidavit or an affidavit by an individual without personal knowledge is insufficient to satisfy movant’s prima facie burden. (See JMD Holding Corp. v Congress Fin. Corp., 4 NY3d 373 [2005].) Further, it is well-settled that summary judgment is a “drastic remedy,” depriving the parties of a trial, and, as such, should only be granted where there is no doubt as to the nonexistence of a triable issue of fact. (See Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439, 441 [1968].)
Non-Employee Ward’s Affidavit is Insufficient
Here, in support of its motion for summary judgment, plaintiff failed to submit any affidavit from an employee of its company, instead relying exclusively on a very short (2V2 pages, double-spaced) affidavit from an employee of another company. The submitted affidavit, signed by Tricia Ward, was presumably offered for two purposes: (1) to provide “personal knowledge” of the facts, as required by CPLR 3212 (b); and (2) to authenticate the limited number of attached business records, pursuant to CPLR 4518, based on her alleged “personal knowledge of all of plaintiff’s relevant business records” (Ward aff ¶ 3). The Ward affidavit fails, however, to do either as Ward lacked “personal knowledge as to the facts” and any capacity to authenticate the attached business records. Consequently, summary judgment should not have been granted, as plaintiff failed to tender any evidentiary proof in admissible form.
Preliminarily, it is noted that Ward is a “Legal Specialist,” employed not even by plaintiff Capital One Bank (USA), but rather by another company, Capital One Services, LLC. Instead of providing an affidavit by an employee of plaintiff, or a sufficient showing as to the actual legal relationship between the two entities, “Legal Specialist” Ward merely alleges, in a conclusory manner, that her employer, nonparty Capital One Services, LLC, is an “agent and affiliate” of plaintiff. Despite the lack of admissible information establishing the actual relationship between the two companies, plaintiff submits non-employee Ward’s affidavit, as its sole proof of its claims, even though she is only a nonparty “Legal Specialist,” tasked with the job of “assisting attorneys” (Ward aff ¶ 1). In essence, the lower court permitted a paralegal to “testify” as to the legal *81 relationship between plaintiff and her employer, a nonparty, and fully accepted this insufficient “evidence,” using such affidavit as the sole basis upon which judgment was awarded against defendant.
Ward’s Lack of Personal Knowledge of the Facts
Non-employee Ward’s affidavit, which plaintiff offers to establish its claims and to support the admission of plaintiff’s business records, contains only her impermissible conclusions and interpretations of the records, which were only partially produced to the court, through her affidavit. Ward’s averments constitute inadmissible hearsay, as she is attesting to alleged facts/conclusions/interpretations based merely on her “personal knowledge of all of plaintiff’s relevant business records concerning . . . the [subject] credit card account” (Ward aff ¶ 3 [emphasis supplied]), and, admittedly, not based on her own “personal knowledge of the facts,” as required by CPLR 3212 (b).[5] The acceptance of Ward’s “testimony” on plaintiff’s summary judgment motion, by the lower court and the majority, is the equivalent of permitting a trial witness to testify as to what she thinks is contained in documents which are not owned by her direct employer, but rather by another company, and which have not been offered into evidence in their entirety.
Even if the rules of evidence were ignored and the records attached to non-employee Ward’s template affidavit were considered, such records are extremely limited and are insufficient, as explained further below.[6] Moreover, upon review, the supplied records (Ward aff, exhibits A, B) do not even support Ward’s alleged facts, interpretations and conclusions allegedly drawn therefrom. For example, paragraph 3 of non-employee Ward’s affidavit, in which she claims “personal knowledge,” is *82 strangely crafted.[7] From the wording it is apparent that (rather than having “personal knowledge of the facts”) Ward only has “personal knowledge,” based solely upon her impermissible interpretation of “all of plaintiff’s relevant business records,” which are not attached in their entirety. It is only from such unattached “relevant business records,” that she has somehow gleaned the knowledge and offers as a “fact” that “ [i]t is plaintiff’s regular business practice to maintain such records, recorded after each transaction in the regular course of plaintiff’s business” (Ward aff ¶¶ 3, 3 [b]). Also, from her alleged “personal knowledge” of all of the unattached “relevant business records” of another company, Ward was somehow able to swear, even though she is not its employee, that plaintiff “Capital One affirms that it would not have extended credit by opening the credit card account at issue without receiving and approving an executed application from defendant” (id. ¶ 3 [a]).
Additionally, to the extent that non-employee Ward claims in paragraph 1 of her affidavit, in a conclusory fashion, to have *83 “personal knowledge” of various aspects of another company’s (plaintiff) “business practices and operations,” the affidavit is silent as to the basis of such alleged “personal knowledge,” other than based on her review of the unattached “relevant business records.” Looking beyond Ward’s boilerplate language is particularly warranted, given her title as a mere “Legal Specialist” (with the duties of “assisting attorneys”), that Ward is employed by a company other than plaintiff, and that the dates of her employment are not supplied. Furthermore, defendant’s opposition papers raise questions as to whether Ward has disingenuously exaggerated her “personal knowledge,” as all of the relevant transactions appear to have occurred before Ward was hired, and this was not refuted, despite plaintiff having been given an opportunity to do so.[8] The unrefuted Linkedln profile page alleged to be that of affiant “Legal Specialist” Tricia Ward, attached to defendant’s counsel’s affirmation in opposition, indicates that, at the time Ward signed the subject affidavit (June 19, 2013), she had only been employed by nonparty Capital One Services, LLC, for less than one year, which is subsequent to all of the relevant transactions at issue herein. Hence, it was impossible for her to have had any personal knowledge (even if the court were to blindly ignore that she was a mere non-employee “Legal Specialist,” rather than an employee of plaintiff). While the majority criticizes the dissent’s “acceptance” of what it characterizes as the “unauthenticated Linkedln profile computer printout,” submitted in opposition by defendant/non-movant (notwithstanding that it was entirely unrebutted by plaintiff and Ward), it is noted that the majority has readily accepted unauthenticated computer generated records submitted by plaintiff’s witness and has permitted the use of a hearsay affidavit by a non-employee “Legal Specialist” as the sole “proof” offered to satisfy plaintiff’s burden, even though plaintiff, as the moving party, has the burden of proof. (See JPMorgan Chase Bank, N.A. v Clancy, 117 AD3d 472 [1st Dept 2014] [reversed the granting *84 of summary judgment as plaintiff failed to establish exhibits attached to employee’s affidavit were admissible as business records under CPLR 4518 (a)].) Moreover, contrary to the strict tenets governing proof required in submissions to support a summary judgment motion, which apply to plaintiff as the moving party, hearsay evidence submitted in opposition to a motion for summary judgment may be considered. (See People v Greenberg, 95 AD3d 474, 484 [1st Dept 2012] [“All of the evidence submitted on a motion for summary judgment is construed in light most favorable to the opponent. . . (and,) in opposition ... , a court can consider hearsay evidence”].) Thus, the majority’s wholesale acceptance of an affidavit by a glorified paralegal (an employee of another company other than plaintiff), when, admittedly, her “personal knowledge” rests entirely on her alleged “personal knowledge of all of plaintiff’s relevant business records,” which have not been attached in their entirety, as the sole basis to award summary judgment is unsupported.
The Ward affidavit is also lacking in relevant details such as the date the account was first opened and when defendant allegedly defaulted. Moreover, no information is supplied as to the relevant time periods, how the documents were prepared, or the basis of any alleged personal knowledge (i.e., information as to the affiant non-employee’s training and experience in plaintiff’s business practices), but for her conclusory boilerplate claims.
Furthermore, given that attorney affirmations are generally insufficient to support motions for summary judgment because they typically lack personal knowledge of the relevant facts (see Stainless, Inc. v Employers Fire Ins. Co., 69 AD2d 27 [1st Dept 1979], affd 49 NY2d 924 [1980]), the sole affidavit relied upon here, prepared by an alleged “Legal Specialist” (in essence, a glorified paralegal), employed by a separate corporation, with no showing of the basis of her alleged personal knowledge of the relevant facts, other than her reliance on her impermissible interpretation of out-of-court business records of plaintiff, is equally insufficient to satisfy plaintiff’s burden on its motion for summary judgment. (See Tower Mineola Ltd. Partnership v Potomac Ins. Co. of Ill., 14 Misc 3d 1238[A], 2007 NY Slip Op 50418[U] [Sup Ct, NY County 2007] [unsubstantiated assertions in affidavits by paralegals or legal assistants insufficient to support summary judgment motions, as they may not interpret documents or attest to facts without a *85 basis for personal knowledge].) While the majority criticizes the citation to Tower Mineola Ltd. Partnership v Potomac Ins. Co. of Ill., notably, they do not dispute that attorneys’ affirmations are routinely rejected on motions for summary judgment as insufficient to lay a proper foundation for the admissibility of a movant’s proof. (See Batista v Santiago, 25 AD3d 326 [1st Dept 2006].) Accordingly, it simply defies logic to then permit an affidavit by a mere “Legal Specialist,” employed by a company separate from plaintiff, whose job is “assisting attorneys,” to be deemed sufficient and the sole basis relied upon in the sua sponte granting of summary judgment to plaintiff. Notably, the majority has not cited to one case in which summary judgment was granted solely based on an affidavit from a nonparty “Legal Specialist,” robo-signed or otherwise. Thus, plaintiff’s sole affidavit submitted to support its motion, of non-employee Ward, lacks probative value and cannot justify the granting of summary judgment in plaintiff’s favor. (See Republic Natl. Bank of N.Y. v Luis Winston, Inc., 107 AD2d 581, 582 [1st Dept 1985] [“(t)o support summary judgment, affidavits must recite material facts from affiants having knowledge of those facts .... (I)mpermissible conclusions and incompetent hearsay cannot justify a grant of summary judgment”].)
Other Irregularities in Affidavit
Furthermore, even a cursory review of the Ward affidavit raises “red flags” and reveals many significant irregularities, which required rejection by the court below. First, the face of the affidavit lists the venue designation of the location where the affidavit was made as “Suffolk County, New York,” yet, without explanation, the jurat (attestation clause) at the end of the affidavit provides that it was somehow signed and notarized in a different state, the state of Virginia. Second, it resembles a “robo-signed” affidavit, one prepared in advance without knowledge of who would be the signatory, of which courts have consistently demonstrated an intolerance.[9] (See American Express Centurion Bank v Bajek, 29 Misc 3d 1226[A], 2010 NY *86 Slip Op 52005[U] [Sup Ct, Orange County 2010]; Intervale Ave Assoc v Donlad, 38 Misc 3d 1221[A], 2013 NY Slip Op 50210[U] [Civ Ct, Bronx County 2013]; 2132 Presidential Assets, LLC v Carrasquillo, 39 Misc 3d 756 [Civ Ct, Bronx County 2013].) Third, it fails to provide, in typed form, the name of the signatory (which never appears but for her alleged signature), and does not even include defendant’s name (but for the caption). Further, there are few individualized details in the short, double-spaced, 2V2-page form affidavit; the only details pertaining to defendant, rather than to any other of plaintiff’s many credit card holders (or Ward’s employer’s other clients), are the account number and the amount of money claimed to be owed.
Insufficient Authentication of Plaintiff’s Business Records by Non-Employee Ward
Not only are there irregularities on the face of the Ward affidavit, but non-employee Ward fails to properly authenticate the limited “proof” attached as exhibits A and B (some credit card statements allegedly sent to defendant and an unsigned, undated agreement with no name or account number referenced, which Ward claims was the “customer agreement . . . mailed to defendant” [Ward aff ¶ 3 (c)]). Both records belong to plaintiff, not Ward’s direct employer. This constitutes a further basis to deny summary judgment.
*87 A business record is admissible if “it was made in the regular course of any business and ... it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter.” (CPLR 4518 [a]; see also People v Kennedy, 68 NY2d 569, 579-580 [1986].) A proper foundation for the admission of a business record must be provided by someone with firsthand knowledge of the record’s preparation in the ordinary course of business. (Babikian v Nikki Midtown, LLC, 60 AD3d 470 [1st Dept 2009] [finding affidavit by bookkeeper submitted in support of summary judgment insufficient to lay a proper foundation for the admissibility of employment records, where the bookkeeper did not have firsthand knowledge of their preparation].) In addition, if the alleged business record was stored electronically (such as the credit card statements relied upon by plaintiff herein), the proponent must also establish that the proffered record “is a true and accurate representation” of the electronic record, and provide sufficient information to enable the court to review “the method or manner by which the electronic record was stored, maintained or retrieved.” (CPLR 4518 [a].)
Here, the Ward affidavit utterly fails to lay a proper foundation under CPLR 4518 for the admission of the records relied upon in the granting of summary judgment in plaintiff’s favor. As indicated, there is no affidavit from an employee of plaintiff. The sole affidavit submitted by plaintiff, signed by Ward, merely lists her job responsibilities in the nonparty company as including, “assisting attorneys with collection on default accounts” (Ward aff ¶ 1). However, Ward fails to explain how her alleged responsibility “assisting attorneys,” at a separate company, gives her the requisite personal knowledge, as to another company’s (plaintiff’s) business and record-keeping practices. (See Unifund CCR Partners v Youngman, 89 AD3d 1377 [4th Dept 2011] [plaintiff failed to establish a proper foundation for the admission of credit card statements and account balance documents where affidavit supplied was by an agent of plaintiff employed as a “(l)egal (l)iason,” rather than by a bank employee with personal knowledge of the bank’s business practices and procedures, and did not establish when, how, or by whom the submitted documents were made and kept].)
While Ward baldly attests that “[i]t is plaintiff’s regular business practice to maintain such records, recorded after each transaction in the regular course of plaintiff’s business,” such *88 claim is preceded by language in the first sentence of paragraph 3, which indicates that her boilerplate recitation is premised solely upon her “personal knowledge of all of plaintiff’s relevant business records concerning . . . the credit card account.” This is not actual “personal knowledge” of plaintiffs record-keeping practices and is plainly insufficient to lay a proper foundation under CPLR 4518. (Ward aff ¶¶ 3, 3 [b] [emphasis supplied and internal quotation marks omitted].)
The Ward affidavit is further deficient to authenticate the submitted records in that it fails to state that “it was the regular course of [plaintiffs] business to make [the submitted records] at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter,”[10] and, that, as the records supplied by plaintiff are “electronic,” that they are a “true and accurate representation [s] of such electronic record [s],” as mandated by CPLR 4518 (a).
While the majority opines that the credit card statements supplied by plaintiff are “self-authenticating,” such concept is only appropriate when the submitted documents are “so patently trustworthy” such that “judicial notice can provide a foundation for admitting the records,” which the lower court did not indicate was the case herein. (Cf. Elkaim v Elkaim, 176 AD2d 116, 117 [1st Dept 1991], appeal dismissed 78 NY2d 1072 [1991] [court ordered bank records of defendant husband, produced at divorce proceeding, were “patently trustworthy”].) Moreover, here, the submitted documents, attached to a roboaffidavit with numerous defects, offered by a “Legal Specialist,” employed by a nonparty, whose job is to “assist attorneys,” can hardly be deemed “patently trustworthy” for purposes of taking judicial notice as to their authenticity.[11] This is particularly true where the affiant Ward affirmatively misrepresents one of *89 the attached documents as being a “copy of defendant’s agreement” (Ward aff ¶ 3 [c]), when such document is unsigned and has no name or account number associated with it. Nor has the majority cited to one case in which unauthenticated documents, submitted as an attachment to an affidavit of a nonparty employee on a summary judgment motion, were held to be self-authenticating.[12]
Insufficient Proof of All Elements of Account Stated
Even if the court were to consider all of the proffered documents and the sole affidavit supplied by plaintiff (non-employee Ward’s affidavit), in support of summary judgment, despite the above detailed numerous and significant deficiencies, plaintiff, nevertheless, failed to meet its prima facie burden in establishing a claim for account stated. Crucial proof as to all the elements of an account stated was not submitted to show that: (1) plaintiff mailed the statements to defendant on a monthly basis, in the regular course of business; and (2) defendant accepted and retained the statements for a reasonable period of time without objection. (Cf. American Express Centurion Bank v Gabay, 94 AD3d 795 [2d Dept 2012]; American Express Centurion Bank v Williams, 24 AD3d 577 [2d Dept 2005]; Citibank [S.D.] v Jones, 272 AD2d 815 [3d Dept 2000], lv denied *90 95 NY2d 764 [2000].) Notably, the Ward affidavit is silent with respect to any alleged mailing of the statements to defendant, as Ward simply states, in a conclusory manner, that plaintiff “provided defendant monthly billing statements,” with no reference to, or proof of, any mailing or allegations as to plaintiff’s regular business practices with respect to mailing statements to its debtors (Ward aff ¶ 3 [b]).[13] Further, presumably, plaintiff bank keeps records and/or has a mechanism for logging objections by debtors; however, no such record or information was provided to the lower court. This lack of proof of the crucial elements of an account stated is not addressed by the majority.
The moving papers also fail to contain a copy of the original credit card agreement, although Ward does claim in error that it is attached as exhibit B,[14] which, while not necessarily needed to establish a cause of action for an account stated claim, is certainly required prima facie proof as to plaintiff’s breach of contract cause of action—the sole cause of action upon which plaintiff, in fact, sought summary judgment.
In sum, the sua sponte granting of summary judgment was in error, based on the absence of notice as to the account stated claim and because the sole affidavit relied upon to award judgment lacked any personal knowledge of the relevant facts and the proof attached was insufficient and not properly authenticated. Even if all these significant infirmities were overlooked, the sole affidavit fails to establish, as a matter of law, that the accounts were mailed to defendant on a monthly basis, in the regular course of business, and that objections were not made by defendant, as the affidavit is silent as to these essential elements of account stated. As plaintiff failed to demonstrate prima facie entitlement to judgment as a matter of law on either of its causes of action, the burden never shifted to defendant to raise a factual issue, by the submission of an affidavit. (See A & J Produce Corp. v De Palo Indus., 215 AD2d 317 [1st Dept 1995]; Hernandez v New York City Tr. Auth., 210 AD2d 95 [1st Dept 1994].) Therefore, the lower court also erred *91 in finding that “defendant . . . failed to come forward with proof in admissible form to raise a triable issue of fact” and, it was clearly not “critical,” as indicated by the majority, that defendant did not submit an affidavit in opposition, due to the lack of sufficiency of the moving papers, which failed to satisfy plaintiff’s burden. (See Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853.) Moreover, the proper summary judgment standard required that the proof submitted by plaintiff be viewed in a light most favorable to defendant (as the non-moving party), and, thus, the granting of summary judgment was unwarranted, as it is a drastic remedy which inappropriately deprived defendant of her day in court. (See Gibson v American Export Isbrandtsen Lines, 125 AD2d 65 [1st Dept 1987]; Henderson v City of New York, 178 AD2d 129 [1st Dept 1991].)
Schoenfeld, J.P., and Shtjlman, J., concur; Ling-Cohan, J., dissents in a separate opinion.

. While the majority, unfortunately, uses the words “laundry list” and “overwrought” to characterize the numerous infirmities pointed out by the dissent, it is noted that the concepts of notice and due process, fundamental fairness, the rules of evidence and principles governing motions for summary judgment are well-established and accepted in American jurisprudence, and are applicable here.

. Paragraph 1 of the affirmation in support of plaintiff’s motion for summary judgment specifically only states that the relief sought is limited to: “This affirmation is made in support of plaintiff’s motion for summary judgment against defendant. . . on plaintiff’s First Cause of Action for breach of contract of a revolving credit card agreement entered into between plaintiff and defendant” (emphasis supplied).

. While the majority focuses on the next sentence that, notwithstanding that movant sought summary judgment only on its breach of contract claim, “[d]efendant nevertheless briefly addresses the account stated claim below” (emphasis supplied), the mere fact that, in an abundance of caution, defendant’s counsel briefly addressed a claim not even sought in the moving papers does not cure the lack of notice and insufficiency of the moving papers, nor is it the equivalent of a full and fair opportunity to be heard on the claim upon *79 which the court sua sponte granted summary judgment. Notably, the elements of an account stated are different than a breach of contract, and, thus, defendant’s counsel’s litigation strategy might have altered on this motion.

. Also absent from plaintiff’s notice of motion is a general relief clause, asking for “other and further relief as the court may deem just and proper,” which, arguably, could have permitted the trial court’s granting of summary judgment on the basis of an account stated. (See HCE Assoc. v 3000 Watermill Lane Realty Corp., 173 AD2d 774 [2d Dept 1991]; Patrick M. Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2214:5; cf. Llano v Leading Ins. Servs., Inc., 45 Misc 3d 131[A], 2014 NY Slip Op 51648 [U] [App Term, 1st Dept 2014] [holding that the court may consider an alternative ground for granting defendants’ cross motion, despite not specifically requesting such relief, where defendants/movants included a general relief clause in their notice of cross motion, and plaintiff suffered no legal prejudice].)
It is noted that plaintiff’s notice of motion also fails to include the grounds upon which relief is being sought, as specifically required by CPLR 2214 (a).

. CPLR 3212 (b) provides in relevant part that “[t]he affidavit shall be by a person having knowledge of the facts.”

. The limited number of records attached to the moving papers consist only of some credit card statements (exhibit A) and the alleged credit card agreement (exhibit B) (which is unsigned, undated, and does not reference defendant’s name or account number), rather than “all of plaintiff’s relevant business records,” to which Ward claims to have “personal knowledge,” and from which she draws conclusions, for the court, notwithstanding that such records are not her direct employer’s records and are not attached in their entirety. As indicated herein, there was an insufficient foundation for the attached limited number of records to be considered as admissible proof. In any event, conspicuously absent from the moving papers was proof of mailing of the alleged credit card statements and records as to defendant’s retention without objection, necessary to establish an account stated cause of action.

. Paragraph 3 of non-employee Ward’s affidavit reads:
“I have personal knowledge of all of plaintiff’s relevant business records concerning Capital One Bank (USÁ), N.A.’s credit card account number . . . (hereinafter ‘the credit card account’), including the following information detailed below: a. That the defendant applied for a credit card, causing plaintiff to issue a credit card to defendant and open the credit card account. The credit card account, which is the subject of this action, was opened after defendant submitted a complete application to plaintiff and plaintiff approved said application. Capital One affirms that it would not have extended credit by opening the credit card account at issue without receiving and approving an executed application from defendant, b. That defendant successfully used and/or authorized the use of the credit card account for the purpose of obtaining goods or services or cash advances; that plaintiff pursuant to its regular business practice, provided defendant monthly billing statements, (copies of this defendant’s monthly billing statements are attached hereto and marked Exhibit ‘A’). The monthly billing statements itemize each transaction in which the credit card was used to purchase goods, services or cash advances. It is plaintiff’s regular business practice to maintain such records, recorded after each transaction in the regular course of plaintiff’s business; c. That defendant has failed to make payments on the credit card account according to the terms of the customer agreement which was mailed to defendant upon acceptance of defendant’s credit card application (a copy of defendant’s agreement is attached hereto and marked Exhibit ‘B’); d. That defendant did not dispute the validity of the balances owed as specified in the monthly accounts sent to defendant each month” (emphasis supplied).

. The record reflects that plaintiff requested, and was granted time to submit a reply, as to defendant’s submission of the Linkedln profile, yet, inexplicably, chose not to; thus, Ward’s Linkedln profile is entirely undisputed. (Brief for defendant-appellant at 2.) Further, such profile is submitted by the person profiled, as per the Linkedln agreement. (See Linkedln, User Agreement §§ 2, 8, https://www.linkedin.com/legal/useragreement [last updated Oct. 23, 2014, accessed Sept. 24, 2015].) If such profile was not posted by Ward, she and plaintiff had the opportunity to rebut such, in a reply.

. Recently, the court rules relating to proof on default judgments in consumer credit matters were amended, “to ensure a fair legal process in the more than 100,000 credit collection lawsuits brought annually in the state courts ... to combat deceptive debt collection practices and protect consumers,” including the granting of default judgments based upon “ ‘robosigned’ affidavits containing hearsay allegations and few if any facts pertaining to the history of the debt at issue.” (New York State Unified Court System, Press *86 Release, Chief Judge Announces Comprehensive Reforms to Promote Equal Justice for New York Consumers in Debt Cases [Apr. 30, 2014], available at https://www.nycourts.gov/press/PDFs/PR14_03.pdf [accessed Aug. 13, 2015]; Administrative Order of Chief Admin Judge of Cts AO/185/14.)
Moreover, in commercial cases such as residential foreclosures, no-fault insurance, consumer debt (such as the within case), as well as Housing Court residential eviction proceedings, similar robo-signed affidavits are routinely rejected. (See Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co., 31 Misc 3d 21 [2d Dept 2011]; Discover Bank v Shimer, 36 Misc 3d 1214[A], 2012 NY Slip Op 51316[U] [Nassau Dist Ct 2012]; Deutsche Bank Natl. Trust Co. v Ramotar, 30 Misc 3d 1208[A], 2011 NY Slip Op 50017[U] [Sup Ct, Queens County 2011]; Intervale Ave Assoc v Donlad, 38 Misc 3d 1221[A], 2013 NY Slip Op 50210[U] [Civ Ct, Bronx County 2013].) Acknowledging the “widespread deficiencies in notarization and ‘robosigning’ of supporting documents” in residential foreclosure cases, Chief Judge of the Court of Appeals, Jonathan Lippman, instituted additional filing requirements “to protect the integrity of the foreclosure process and prevent wrongful foreclosures.” (New York State Unified Court System, Press Release, New York Courts First in Country to Institute Filing Requirement to Preserve Integrity of Foreclosure Process [Oct. 20, 2010], available at http://www.nycourts.gov/press/ pr2010_12.shtml [accessed Aug. 7, 2015]; see also Administrative Order of Chief Admin Judge of Cts AO/431/11.)

. Ward merely states that based upon her “personal knowledge of all of plaintiff’s relevant business records concerning . . . the credit card account” such records are “recorded after each transaction,” with no reference to it being recorded contemporaneously or within a reasonable time thereafter, contrary to what is required by CPLR 4518 (a).

. In opposition to plaintiff’s motion, defendant’s counsel makes a point that plaintiff failed to comply with the November 29, 2012 order by the Honorable Margaret Chan, which required that plaintiff supply defendant with documentary discovery, including “all statements of account (showing charges and payments made, including a statement showing when the last payment was made).” Thus, defendant could not even compare the attached documents to the discovery she was entitled to receive from plaintiff directly, had Judge Chan’s discovery order been obeyed, prior to the filing of plaintiff’s summary judgment motion. (Exhibit to affirmation in opp.)

. The majority cites to two cases which are easily distinguishable. In both cases, the totality and abundance of the evidence offered, as well as the vehicle through which the evidence was provided to the court, gave credence to the documents in dispute being authentic. In contrast, here, the sole proof offered by the moving party is through an affidavit of a nonparty “Legal Specialist,” tasked with the job of “assisting attorneys.” In Portfolio Recovery Assoc., LLC v Lall (127 AD3d 576 [1st Dept 2015]), cited by the majority, “self-authentication” of the account statements was permitted at trial, in which there was an abundance of evidence offered including the defendant’s admission that he used the credit card, and, significantly, there was testimony from the plaintiff’s own employee, rather than here, used in a summary judgment motion, to deprive defendant of a trial, where the sole “proof” offered was via affidavit by a non-employee “Legal Specialist.” In the majority’s other cited case, Merrill Lynch Bus. Fin. Servs. Inc. v Trataros Constr., Inc. (30 AD3d 336 [1st Dept 2006]), the Court stated, as to the disputed documents, “[m]oreover, a proper business records foundation for these [account] statements was laid by plaintiff’s witness, who testified.” Further, a review of the lower court decision in Trataros reveals that the movant therein submitted an affidavit from its vice-president, with personal knowledge; also, the actual loan agreement with the promissory note and a subsequent letter agreement between the parties were specifically referenced, rather than here, where just an affidavit from a nonparty “Legal Specialist” was supplied, inter alia, with an undated, unsigned credit agreement. (See Merrill Lynch Bus. Fin. Servs. Inc. v Trataros Constr., Inc., 2004 NY Slip Op 30370[U] [Sup Ct, NY County, May 28, 2004, No. 601335/2003].)

. Ward makes the statement, not based on her “personal knowledge of the facts,” as required, but rather on her “personal knowledge of all of plaintiff’s relevant business records” (Ward aff ¶ 3 [emphasis supplied]); however, all of plaintiff’s relevant business records were not attached to her affidavit, so her conclusions were impermissibly drawn.

. Exhibit B which Ward claims is a “copy of defendant’s agreement” (Ward aff ¶ 3 [c]) is, in actuality, only a mere copy of a generic form agreement which is unsigned, undated and does not reference defendant’s name or account number.