OPINION OF THE COURT
Philip S. Straniere, J.
Plaintiff, Liman Vrlaku, commenced this civil action in Supreme Court, Richmond County, against the defendant, Plaza Construction Corporation, alleging that owing to the defendant’s failure to comply with New York’s Labor Law, plaintiff suffered personal injuries. A nonjury trial commenced on July 17, 2017 and continued July 18, 19, 20 and 21, 2017. Both sides are represented by counsel.
Plaintiff alleges that on April 30, 2012, he and a coworker, Colin Colbourne, were in a scissor lift about 30 feet above the ground installing sheetrock in the gymnasium ceiling of Mas-peth High School when the lift suddenly moved up causing him to be injured when his arm was caught between the sheetrock and the railing of the scissor lift. The scissor lift was owned by an independent entity and leased by plaintiff’s employer, R & J Construction Corp. Neither the owner of the scissor lift, nor R & J are parties to this action.
Defendant sought to introduce an audio-digital recording of Colin Colbourne, made May 20, 2015 by an employee of G4S *645 Investigators who were hired by defendant’s insurance carrier, Liberty Mutual Insurance, to investigate the accident. The digital recording was made on a memory card, and stored on G4S’s computer. A copy of the recording was given to defense counsel and reduced to written questions by someone in defense counsel’s office for use in cross-examination of Colbourne. Plaintiff asserted that neither the recording nor any written transcript were exchanged. Defendant contends that both the recording and the transcript were work product prepared for litigation and not discoverable.
The investigator who made the recording, Thomas Maloney, was called to testify as a defense witness. He was asked to authenticate the recording and its contents. The recording was played in court and Maloney was cross-examined by plaintiff. Plaintiff objected to the disc prepared by the investigator being introduced into evidence. The court reserved decision on the admissibility of the recording. Maloney explained that he recorded the conversation with a digital recorder and stored it on a memory card. He then delivered the memory card to G4S’s office where the contents of the memory card were stored on the company’s server.
Remarkably, neither side had taken a deposition of Col-bourne before the trial even though it was obvious that Col-bourne, as the only other possible eyewitness to the event, would have to testify. Counsel, both experienced trial lawyers, were carrying New York’s outdated “trial by ambush” to a new category, “trial by clairvoyance.”
In order to level the playing field, the court ordered the deposition of Colbourne for the morning of July 19, 2017.
The issue of admissibility of the digital recording is governed by several sections of the Civil Practice Law and Rules.
CPLR 4518, Business records, provides:
“(a) Generally. . . . An electronic record, as defined in section three hundred two of the state technology law, used or stored as such a memorandum or record, shall be admissible in a tangible exhibit that is a true and accurate representation of such electronic record. The court may consider the method or manner by which the electronic record was stored, maintained or retrieved in determining whether the exhibit is a true and accurate repre *646 sentation of such electronic record. All other circumstances of the making of the memorandum or record, including lack of personal knowledge by the maker, may be proved to affect its weight, but they shall not affect its admissibility.”
CPLR 4539, Reproductions of original, provides:
“(b) A reproduction created by any process which stores an image of any writing, entry, print or representation and which does not permit additions, deletions, or changes without leaving a record of such additions, deletions, or changes, when authenticated by competent testimony or affidavit which shall include the manner or method by which tampering or degradation of the reproduction is prevented, shall be as admissible in evidence as the original.”
State Technology Law § 302, Definitions, provides:
“For the purpose of this article:
“1. ‘Electronic’ shall mean of or relating to technology having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities.
“2. ‘Electronic record’ shall mean information, evidencing any act, transaction, occurrence, event, or other activity, produced or stored by electronic means and capable of being accurately reproduced in forms perceptible by human sensory capabilities.”
State Technology Law § 306 provides:
“In any legal proceeding where the provisions of the civil practice law and rules are applicable, an electronic record or electronic signature may be admitted into evidence pursuant to the provisions of article forty-five of the civil practice law and rules including, but not limited to section four thousand five hundred thirty-nine of such law and rules.”
In order for the recording or a transcript prepared from the recording to be admissible into evidence, the recording or transcript must be authenticated. Defendant asserts that the testimony of the investigator is sufficient to authenticate the recording and that any of the objections raised by the plaintiff goes to the weight or reliability of the evidence.
*647 Legal Issues Presented
A. Is the digital recording admissible?
Defendant asserts that the digital recording of the conversation between the investigator, Maloney, and the witness, Col-bourne, is admissible as the business record of the investigator. Defendant further contends that the disc is being submitted solely for the purpose of impeaching the trial testimony of Col-bourne.
A business record is admissible if a proper foundation is laid and the contents of the recording may be authenticated. To be admissible the record must be made in the regular course of business and it must be the regular course of business to make such a record. The proper foundation must be provided by someone with personal knowledge of the maker’s business practices and procedures (CPLR 4518 [a]; Palisades Collection, LLC v Kedik, 67 AD3d 1329 [2009]). As cited above the general requirements for the admissibility of a business record have been extended to electronic records.
Because Maloney, a participant in and the maker of the digital recording, testified that the recording is essentially a fair and accurate record of the conversation, the recording has presumably been authenticated to a sufficient degree to be admissible (People v Agudelo, 96 AD3d 611 [2012]). The credibility of the authenticating witness goes to the weight accorded the evidence and not its admissibility (Hansen v Coca-Cola Bottling Co. of N.Y., 78 AD2d 848 [1980]).
However, because this was a digital recording of the interview, in order to be admissible, defendant must also establish compliance with CPLR 4518 and 4539 as well as State Technology Law §§ 302 and 306. Defendant sought to achieve compliance by producing an “Audio CD-ROM” of the conversation certified by “Amanda Bouleris, Operations Manager of G4S Compliance & Investigations.” In the certification, she states that this is a complete copy of the recorded audio statement uploaded by Maloney to the G4S server and maintained by G4S on its computer in digital format. The certification goes on to assert that the audio recording was copied from the server onto the disc by Bill Crews, evidence processing specialist, and that the audio statement was “obtained, prepared and maintained in the regular course of business of G4S, and it is in the regular course of business of G4S to maintain the recorded audio statement.”
The certification does not comply with the State Technology Law. As noted in American Express Centurion Bank v Badala *648 menti (30 Misc 3d 1201[A], 2010 NY Slip Op 52238[U] [2010], quoting Weinstein-Korn-Miller, NY Civ Prac ¶ 4539.11) the standard regarding electronically stored images is that they “cannot qualify as a reproduction of an original made in the ordinary course of business unless the enterprise in question has incorporated into its technology security measures sufficient to guarantee that any such alteration leaves an audit [trail] which at least indicates that a change has been made.”
Applying this standard to the certification of Bouleris, it must be concluded it does not meet the CPLR and State Technology Law criteria. She fails to describe whether the record-keeping system of G4S permits “additions, deletions, or changes without leaving a record of such additions, deletions, or changes.” Nor does her certification address “the manner or method by which tampering or degradation of the reproduced record] is prevented.” An affidavit by someone with personal knowledge of G4S’s electronic business record keeping and care is required to meet the statutes’ requirements of a proper foundation to make such a record admissible.
The defense argues that digital recordings are not covered by the statute and cites People v Kangas (28 NY3d 984 [2016]) to support that contention. The Court of Appeals apparently has concluded that CPLR 4539 (b) does not apply to documents originally created in electronic form. The case holds that the statute only is applicable to a “writing, entry, print or representation” that is transferred from a hard copy to an electronic record. Under this interpretation CPLR 4539 (b) would never be applicable to recordings.
The Court of Appeals focused on the language in the statute referring to “any writing, entry, print or representation” rather on the earlier words “a reproduction created by any process” which would enable the statute to expand coverage to meet changes in technology. It also seems to contradict the definitions of the State Technology Law for “electronic” and “electronic record” cited above. Applying this standard to the facts of this case, it would mean that if the investigator had prepared a written statement for the witness to read and sign and then had that statement scanned and stored electronically, the CPLR 4539 (b) affidavit would be required. But because he recorded the statement digitally and then transferred it to the company’s server for storage and later reproduction in CD-ROM, no affidavit is needed. Does this make sense? We are no longer living in the age where some third-rate private investigator is taping Perry Mason’s client with a reel-to-reel tape re *649 corder in the hope of making some money from blackmail and Perry has to have Paul Drake prove the tape was spliced and incomplete.
It must be asked, based on Kangas, what is the rule if the digital recording device that simultaneously produces the conversation in a written format, such as “closed captioning” on television or real-time reporting which is used for individuals with hearing problems in the courthouse, is used? Would CPLR 4539 (b) be applicable?
CPLR 4518 (a) seems to provide a way to resolve this dilemma, in that it states that the court “may consider the method or manner by which the electronic record was stored, maintained or retrieved in determining whether the exhibit is a true and accurate representation of such electronic record.” In other words, if the court accepts the testimony of a participant in the recorded conversation, then there is no need to question the storage, maintenance and retrieval of the electronic record.
Based on the foregoing, the fact that Maloney testified that the recording was an accurate record of his interview with Col-bourne is sufficient to make it admissible. Any problems with the certification from Bouleris go to the weight to be accorded the recording not to its admissibility. However, as set forth below, the court must reject the submission.
B. Is the recording accurate?
Although Maloney testified that the recording was accurate after it was played in court, it is obvious that it does not reflect the complete conversation with the witness, Colbourne. For instance, Maloney states: “Okay, prior to this statement I showed you some pictures that Scott Palumbo provided me of the accident area” (tr July 20, 2017 at 325, line 24) and later: “You already did talk about that at length prior to this statement, and you really don’t remember and you can’t recall?” (tr July 20, 2017 at 329, line 8).
Plaintiff’s counsel raised the issue that the recording is not complete and that there were substantial conversations between the investigator and the witness prior to beginning the recording. Maloney admitted that he had taken notes at that time yet he failed to bring them to court. He also was evasive when questioned about at what time he arrived at Colbourne’s house and how long he spoke to Colbourne before the recording was made. When questioned about this he answered “I don’t *650 know what the conversations consisted of before the recording going on” (tr July 20, 2017 at 352, line 2).
More importantly about 11 minutes into the recording there was an extremely loud “click” sound. The click was so loud, that the court immediately thought that either Miriam Makeba was singing the Click Song (Qongqothwane song in Xhosa language); some varmint got the drop on the Lone Ranger and was cocking his six-shooter; or I was back in my 8 a.m. art history class at Wagner College with Professor Young while he clicked through a slide show trying to explain the difference between abstract impressionism and abstract expressionism paintings.
Maloney’s explanation was that “I was doing something in my car, so you can hear the engine on, the birds chirping, the window going down, and maybe something falling in my cup holder or something” (tr July 20, 2017 at 342, line 14). When asked again about the click he said: “you can play it back. Maybe it was something dropping in my car. I have no idea” (tr July 20, 2017 at 367, line 12). These answers are less than satisfactory and border on being deliberately evasive.
Maloney was also asked about a period of silence on the recording and gave this explanation for the pause: “Maybe I was adjusting my seat, putting the windows up, turning the AC on, you never know” (tr July 20, 2017 at 366, line 23).
Plaintiff’s counsel also pointed out that there was no time stamp or any other demarcation of the actual time of day of the recording and its length. Further, Colbourne was not present when the recording was introduced into evidence; he was never provided either a copy of the CD-ROM or a transcript to review. Neither side even questioned him about the making of the recording.
Based on the foregoing it must be concluded that the recording is not admissible because there are too many discrepancies between what is purported to be a complete recording of the interview and the explanations offered by the investigator as to certain problems with the recording, which are less than credible. The recording cannot be used to impeach the trial testimony of Colbourne.
C. Are defendant’s counsel’s notes work product?
Plaintiff objected to defendant using the digital recording made by Maloney to prepare notes to cross-examine Colbourne because neither the existence of the recording nor the notes de *651 fendant’s counsel alleges he made from the recording were disclosed.
The objection presumes that the plaintiff made a discovery demand for all witness statements in the possession of the defendant. Unfortunately, plaintiff failed to produce a copy of any such demand served upon the defendant during discovery.
Statements given to a liability insurer’s claims department which are solely prepared in anticipation of litigation are entitled to qualified immunity from discovery pursuant to CPLR 3101 (d) (2) (Kin Hwa Ku v City of New York, 106 AD3d 698 [2013]). However, the burden of proof is on the party opposing discovery to establish that the statement is privileged material prepared solely in anticipation of litigation or trial (Agovino v Taco Bell 5083, 225 AD2d 569 [1996]). Such statements are discoverable if they contain information which would be necessary for the opponent to properly prepare for trial.
Attorney work product is subject to absolute privilege under CPLR 3101 (c) and is limited to materials prepared by the attorney, while acting as an attorney, which contains the attorney’s legal analysis, conclusions, theory or strategy (Geffner v Mercy Med. Ctr., 125 AD3d 802 [2015]). However, the mere fact that a narrative statement is transcribed by an attorney is not sufficient to render the statement a “work product” (People v Kozlowski, 11 NY3d 223 [2008]). The fact that an attorney took a statement that could have been taken by a layperson does not make the statement attorney work product entitled to the absolute privilege. Maloney at trial testified that the recording was made as part of the investigation of the accident arising from the commencement of the litigation by the plaintiff. This made it subject to a qualified privilege.
It must be concluded that had the plaintiff made a proper demand during pretrial discovery, the digital recording of Col-bourne would have been discoverable. However, this apparently was never done. Also, nothing prohibited the plaintiff from conducting his own interview of the witness prior to trial. Therefore, defendant did not have to turn over the recording to the plaintiff when requested at trial. Any prejudice to the plaintiff was removed by having the parties depose Colbourne before he testified.
Conclusion
Based on the totality of the circumstances, the digital recording of Colbourne is not admissible; there are too many *652 unexplained discrepancies with the recording played in court in the presence of the investigator. Because there was no attempt to authenticate the recording of Salvatore Governara it too is not admissible.