Knight v New York & Presbyt. Hosp. (2023 NY Slip Op 04258)

Knight v New York & Presbyt. Hosp.

2023 NY Slip Op 04258

Decided on August 10, 2023

Appellate Division, First Department

GONZ LEZ, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 10, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
Ellen Gesmer, Lizbeth González, Saliann Scarpulla, Manuel Mendez

Index No. 805224/21 Appeal No. 178 Case No. 2022-03239 

[*1]James Knight, as Administrator of The Estate of Pamela J. Knight, Plaintiff-Appellant,
v
The New York and Presbyterian Hospital, et al., Defendants, Dewitt Rehabilitation and Nursing Center, Doing Business as Upper East Side Rehabilitation and Nursing Center., Defendant-Respondent.

Plaintiff appeals from an order of the Supreme Court, New York County (John J. Kelley, J.), entered March 31, 2022, which granted defendant Dewitt Rehabilitation and Nursing Center, Inc. d/b/a Upper East Side Rehabilitation and Nursing Center's motion to change venue from New York County to Nassau County pursuant to CPLR 501, 510, and 511.

Nguyen Lefitt, PC, New York (Stephen D. Chakwin, Jr. of counsel), for appellant.
Goldberg Segalla, LLP, White Plains (William T. O'Connell of counsel), for respondent.

González, J. 

In January 2019, plaintiff's decedent, then 89-year-old Pamela J. Knight, fell and fractured her hip. From January to May, 2019, decedent received care from defendants The New York and Presbyterian Hospital (NYPH), Amsterdam Nursing Home Corp. (Amsterdam), and Dewitt Rehabilitation and Nursing Center, Inc. d/b/a Upper East Side Rehabilitation and Nursing Center (Dewitt). Decedent died on August 30, 2019.
In July 2021, plaintiff, decedent's son, acting as administrator of decedent's estate, commenced this action in Supreme Court, New York County, asserting claims for personal injuries. Plaintiff premised venue on allegations that decedent resided in and defendants operated in New York County.
In response, Dewitt moved pursuant to CPLR 501, 510 and 511 to change venue from New York County to Nassau County. Dewitt contended that decedent had executed admission agreements with Dewitt that designated Nassau County as the locus for resolving claims arising out of the agreements or for negligence or personal injury.
In support of its motion, Dewitt submitted, among other things, the affidavit of its Director of Admissions, Francesca Trimarchi. Trimarchi stated that it was Dewitt's custom and practice to have an employee — a facility representative — meet with residents to review admissions paperwork, including the admission agreement. After confirming that the resident has the capacity to comprehend and sign the agreement, it was Dewitt's custom and practice that the facility representative would review each page and personally witness the signature, which is done by hand or electronically via Docusign.
Trimarchi appended copies of the admissions agreements that Dewitt maintains decedent executed in February and March, 2019. Each copy bore what purported to be decedent's signature by Docusign, as well as decedent's initials (PK) on each page, also executed by Docusign, and the Docusign signature of a Dewitt facility representative, Eliezer Morales.
Trimarchi admitted that she had no personal recollection of decedent. Trimarchi asserted that Morales's signature confirmed that he was present when decedent signed the agreements. Dewitt did not submit any affidavit from Morales, however. Nor did Dewitt provide any explanation as to how the Docusign signatures were generated or otherwise explain how those signatures could be reliably attributed to decedent.
In opposition, plaintiff argued that Dewitt failed to establish that decedent executed [*2]the agreements. Plaintiff discounted Trimarchi's affidavit, since she had no firsthand knowledge that decedent signed the document. Plaintiff also submitted an affidavit, together with an exemplar of decedent's signature. Plaintiff asserted that he was familiar with his mother's signature and that the Docusign signatures on the agreements (which visibly differed from the exemplar) were not hers. Plaintiff further contended that the Docusign signatures did not match each other.[FN1]

Supreme Court granted Dewitt's motion. The court held that Dewitt met its burden of showing that the agreements' forum selection clause was applicable and enforceable. The court found that plaintiff's affidavit failed to raise any issues of fact as to the authenticity of decedent's signatures. The court noted that the proffered exemplar was "yellowed with age," and that plaintiff failed to account for the possibility that decedent's signature had changed over time, or that differences between decedent's signatures and the exemplar were not attributable to decedent's age and possible infirmity at the time of those signatures. The court made no mention of the fact that the agreements bore electronic signatures.
Where no material facts are in dispute, a contractual forum selection clause is prima facie valid and enforceable, absent a showing that it is "unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching," or that a trial in the designated forum would be so difficult as to deprive the challenging party of its day in court (Grant v United Odd Fellow, 187 AD3d 440, 441 [1st Dept 2020] [internal quotation marks omitted]; see CPLR 501).[FN2]

Nonetheless, the "burden of proving the existence, terms and validity of a contract rests on the party seeking to enforce it" (Paz v Singer Co., 151 AD2d 234, 235 [1st Dept 1989]; accord e.g. Amica Mut. Ins. Co. v Kingston Oil Supply Corp., 134 AD3d 750, 752 [2d Dept 2015]). This requires, in the first instance, authentication of the purported writing (see Clarke v American Truck & Trailer, Inc., 171 AD3d 405, 406 [1st Dept 2019]; Bermudez v Ruiz, 185 AD2d 212, 214 [1st Dept 1992]; see generally Prince, Richardson on Evidence § 9-101). Authentication may be effected by various means, including, for example, by certificate of acknowledgment (see CPLR 4538), by comparison of handwriting (see CPLR 4536), or by the testimony of a person who witnessed the signing of the document (see Andreyeva v Haym Solomon Home for the Aged, LLC, 190 AD3d 801, 802 [2d Dept 2021]).
Here, as noted, in support of its motion, Dewitt submitted Trimarchi's affidavit, along with copies of the admissions agreements. Trimarchi admitted, however, that she was not present during the signing of the admissions agreement. Trimarchi attested only to her understanding of how admissions agreements were usually signed; she had no actual knowledge of how the agreements bearing decedent's name came to be signed. Moreover, Trimarchi did not describe [*3]any protocols governing the use of Docusign. Accordingly, her affidavit cannot serve to authenticate the agreements (see Andreyeva, 190 AD3d at 802). Dewitt did not seek to authenticate decedent's signature by any other means, such as a certificate of acknowledgment or a handwriting exemplar. Since Dewitt failed to authenticate the agreements, it correspondingly failed to show that the forum selection clauses set forth in those documents are enforceable against plaintiff (see id.).
The dissent notes that the plaintiff in Caio v Throgs Neck Rehabilitation & Nursing Ctr. (197 AD3d 1030 [1st Dept 2021]) contended, unsuccessfully, that the decedent's son lacked authority to sign the admissions agreement on behalf of his father. Caio is distinguishable. In that case, in reversing the motion court's denial of the defendants' CPLR 501 motion to change venue, we implicitly credited the defendants' argument that the decedent's son had apparent authority to sign the agreement. Moreover, unlike Caio, the authenticity of decedent's purported signatures is at issue here.
An authenticated contract is a "verbal act" (Crawford v Franklin Credit Mgt. Corp., 2015 WL 1378882, *3, 2015 US Dist LEXIS 38737, at *10 [SD NY 2015]), affd sub nom. Crawford v Tribeca Lending Corp., 815 F3d 121 [2d Cir 2016]), and not hearsay under the business records exception (see Global Montello Group Corp. v Bronx Auto Tire, Inc., 184 AD3d 494, 495 [1st Dept 2020]). Dewitt's contention that the agreements are admissible as business records is unavailing. To have a document admitted as a business record, the party offering the record must show (1) it was produced in the ordinary course of business; (2) it was the regular course of business to make such record; and (3) it was made at the time of the act, transaction, occurrence or event or within a reasonable time thereafter (see CPLR 4518[a]; People v Cratsley, 86 NY2d 81, 89 [1995]). In her supporting affidavit, Trimarchi states only that she conducted a search of Dewitt's records relating to decedent's admissions to Dewitt, and that she attached "true and complete" copies of those agreements as "kept and maintained . . . by [Dewitt] as a business record." In particular, Trimarchi does not aver that the agreements were not only maintained, but created, in the regular course of business (see People v Kennedy, 68 NY2d 569, 579 [1986]; JPMorgan Chase Bank, N.A. v Clancy, 117 AD3d 472, 473 [1st Dept 2014]). Trimarchi's conclusory assertions do not meet what is required for admission of the agreements as business records.
It is well established that a forged signature renders a contract void ab initio (see Caricati v Caricati, 181 AD3d 1279, 1279 [4th Dept 2020]; Kwang Hee Lee v ADJMI 936 Realty Assoc., 46 AD3d 629, 631 [2d Dept 2007]; Orlosky v Empire Sec. Sys., 230 AD2d 401, 403 [3d Dept 1997]). If the entire agreement is void, any forum selection clause contained therein is unenforceable (DeSola Group v Coors Brewing Co., 199 AD2d 141[*4], 141-42 [1st Dept 1993]; see Lei Chen v Cenntro Elec. Group Ltd., 2023 US Dist LEXIS 57113, at *6-*7 [SD NY 2023] [applying New York law]).
Plaintiff raises issues of fact as to the validity of decedent's signatures. To be sure, the signature on a written instrument that has been entered into evidence may enjoy a presumption of genuineness (see e.g. CPLR 4538 [certificate of acknowledgment constitutes prima facie evidence that writing was executed by person who purported to do so]; UCC § 3-307 [signature on writing presumed to be genuine, but party seeking to enforce signature bears burden of establishing its effectiveness]). The fact that the disputed signatures were electronic does not nullify that presumption, since, pursuant to the Electronic Signatures and Records Act (ESRA) (State Technology Law art. 3), electronic signatures "have the same validity and effect as the use of a signature affixed by hand" (State Technology Law § 304[2]).
The presumption of genuineness is rebuttable, however (see Estaba v Estaba, 129 AD3d 601, 601 [1st Dept 2015]; Seaboard Sur. Co. v. Earthline Corp., 262 AD2d 253, 253 [1st Dept 1999]). While "[s]omething more than a bald assertion of forgery is required to create an issue of fact contesting the authenticity of a signature," an expert opinion is not required (Banco Popular N. Am. v Victory Taxi Mgt., 1 NY3d 381, 384 [2004]). Here, plaintiff 's affidavit, which highlights the irregularities in decedent's purported signatures, together with an exemplar of a known signature, raises issues of fact as to the authenticity of the signatures on the admissions agreements (see Estaba, 129 AD3d at 601; Cicale v Wachovia Bank N.A., 56 AD3d 392, 393 [1st Dept 2008]; Seaboard Surety, 262 AD2d at 253).[FN3]

We further note that, while electronic signatures, by statute, have the same validity as handwritten signatures (State Technology Law § 304[2]), electronic signatures, by their nature, may present special considerations when their genuineness is challenged. Under the current state of technology, it is frequently the case that a person's electronic signature bears little resemblance to a handwritten signature made the same day. Indeed, an "electronic signature," which the ESRA defines as "an electronic sound, symbol, or process, attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the record" (State Technology Law § 302[3]), may not seek to duplicate the person's handwritten signature at all.
Anticipating such difficulties, the ESRA provides that electronic records and signatures may be admitted into evidence pursuant to the provisions of CPLR article 45, including specifically CPLR 4539 (see State Technology Law § 306). CPLR 4539, in turn, provides that electronic records are admissible into evidence "when authenticated by competent testimony or affidavit which shall include the manner or method by which tampering or degradation of" the record or signature [*5]is prevented (CPLR 4539[b]). Here, Dewitt could have sought to establish the genuineness of decedent's electronic signature by the affidavit of someone with knowledge of the Docusign protocols and indicia of reliability, both generally and as applied to decedent's proffered signatures (see Vrlaku v Plaza Constr. Corp., 57 Misc 3d 643, 648 [Sup Ct, Richmond County 2017]). Dewitt did not do this.[FN4]

Since Dewitt has not at this juncture established that any valid contract was made with decedent, the forum selection clause contained in the admission agreements does not come into play (see Andreyeva, 190 AD3d at 802; see also DeSola Group, 199 AD2d at 141-142). Dewitt's motion to change venue should be denied.
Accordingly, the order of the Supreme Court, New York County (John J. Kelley, J.), entered March 31, 2022, which granted defendant Dewitt Rehabilitation and Nursing Center, Inc. d/b/a Upper East Side Rehabilitation and Nursing Center's motion to change venue from New York County to Nassau County pursuant to CPLR 501, 510, and 511, should be reversed, on the law, without costs, and the motion for change of venue denied.
All concur except Webber, J.P. and Scarpulla, J.
who dissent in a separate Opinion by Webber, J.P.

WEBBER, J.P. (dissenting)
 

I respectfully dissent. In my opinion, Supreme Court properly granted defendant Dewitt Rehabilitation and Nursing Center, Inc. d/b/a Upper East Side Rehabilitation and Nursing Center's motion to change venue from New York County to Nassau County pursuant to CPLR 501, 510, and 511.
As part of decedent's admission to the nursing home, decedent executed two separate admission agreements each containing a forum selection clause directing any disputes arising from the agreement, for personal injury or negligence, to be commenced in Nassau County, New York. The agreements contained decedent's electronic signature and initials on each page, and defendants provided an affidavit from the Director of Admissions at the nursing home, who attested to the customs and practices of the nursing home when admitting patients.
I see no reason to disregard the prior rulings of this Court enforcing forum selection clauses in admission agreements to nursing homes (see e.g. Hendricks v Wayne Ctr. for Nursing & Rehabilitation, 194 AD3d 648 [1st Dept 2021] [Supreme Court should have granted the defendant's motion to change the venue of the action from Bronx County to Westchester County; the defendant established that the admission agreement signed by the plaintiff's designated representative on her behalf to secure her admission to its nursing home had a forum-selection clause]; Martin v Workmen's Circle Multicare Ctr., 171 AD3d 490 [1st Dept 2019] [the motion court properly applied the venue selection clause transferring venue from Bronx to Nassau County; no evidence of fraud or overreaching in the execution of the agreement was established]; Medina v Gold Crest Care Ctr., Inc., 117 AD3d 633 [1st Dept 2014] [the defendant's [*6]motion to change the venue from Bronx County to Westchester County should have been granted based on venue-selection clause in an admission agreement signed by the plaintiff as attorney-in-fact for her grandmother; conclusory assertions that the venue-selection clause violates public policy were rejected when there was no evidence of fraud in the execution of the agreement]; Public Adm'r Bronx County v Montefiore Med. Ctr., 93 AD3d 620, 621 [1st Dept 2012] [venue was properly transferred from Bronx to Westchester County; the plaintiff failed to show that enforcement of the forum selection clause would violate public policy]).
In order to invalidate a forum-selection clause, it must be shown that its enforcement would be unreasonable, unjust, or would contravene public policy, or that the clause is invalid because of fraud or overreaching (Puleo v Shore View Ctr. for Rehabilitation & Health Care, 132 AD3d 651, 652 [2d Dept 2015]; Bhonlay v Raquette Lake Camps, Inc., 120 AD3d 1015, 1016 [1st Dept 2014]).
This Court has made clear that the burden here is on plaintiff, as the challenging party, to demonstrate why the forum selection clause should not be enforced (Caio v Throgs Neck Rehabilitation & Nursing Ctr., 197 AD3d 1030, 1031 [1st Dept 2021]). In Caio, we reversed Supreme Court and granted the defendants' motion to change venue from the Bronx to Westchester County. We held that the defendants established that the nursing home admission agreement, which included a forum selection clause providing that Supreme Court, Westchester County, had exclusive jurisdiction, was properly signed by the designated representative (decedent's son) on his behalf to secure his admission to its nursing home. We noted that while the defendants failed to proffer an affidavit by a person having personal knowledge of the circumstances under which the admission agreement was executed, the plaintiff, as the party challenging the validity of the agreement's venue selection clause, had failed to meet the burden of showing why the agreement should not be enforced.
Here, the majority is effectively changing the evidentiary standard by erroneously shifting the burden of authenticating the agreements and therefore the enforceability of the forum selection clause to defendant nursing home. This holding disregards our prior decisions as well as CPLR 501, 510 and 514.
In its attempts to distinguish Caio, the majority states that there was no claim that the contract containing the forum selection clause at issue was not signed by the purported signatory. However, the plaintiff in Caio argued that the defendants did not establish that the decedent's son had authority to sign the agreement on the decedent's behalf, and whether the defendants had explained the agreement's terms before he signed it. Both arguments were rejected by this Court.[FN1]

In my opinion, plaintiff has failed to meet his burden. Plaintiff's affidavit from decedent's son purporting to demonstrate that the signature [*7]and initials on the admission agreement do not belong to decedent, is insufficient to demonstrate the admission agreement was unreasonable, unjust, contravenes public policy, the result of fraud or overreaching, or shown that a trial in the selected forum would deprive the challenging party of its day in court (see Banco Popular N. Am. v Victory Taxi Mgt., 1 NY3d 381, 384 [2004] ["Something more than a bald assertion of forgery is required to create an issue of fact contesting the authenticity of a signature"]); see also Ulm I Holding Corp. v Antell, 155 AD3d 585, 586 [1st Dept 2017] [the defendant provided only a bald assertion that the signature was a forgery]).
The majority correctly asserts that a forged signature renders a contract void ab initio (see Caricati v Caricati, 181 AD3d 1279, 1279 [4th Dept 2020]; Kwang Hee Lee v ADJMI 936 Realty Assoc., 46 AD3d 629, 631 [2d Dept 2007]; Orlosky v Empire Sec. Sys., 230 AD2d 401, 403 [3d Dept 1997]). However as noted by Supreme Court, "both the Court of Appeals and the First Department have ruled that the burden is on the person alleging a forgery to establish that a contract was indeed forged" (Knight v New York & Presbyt. Hosp, 2022 NY Slip Op 32611[U] [Sup Ct, NY County 2022], citing Banco Popular N. Am., 1 NY3d at 384; Ulm I Holding Corp., 155 AD3d at 586; Bronsnick v Brisman, 30 AD3d 224, 224 [1st Dept 2006]; Peyton v State of Newburgh, Inc., 14 AD3d 51, 54 [1st Dept 2004]; see also People ex rel. Baker v Warden, Rikers Is. Correctional Facility, 17 AD3d 266, 267 [1st Dept 2005]).
Here, plaintiff did not identify the document from which the exemplar of decedent's signature was extracted or the date when that document was signed. Plaintiff also failed to present any expert affidavit on the alleged inauthenticity of decedent's signature. As noted by the court, plaintiff failed to account for the possibility that his decedent's signature changed as she aged and became infirm. The court also noted that the decedent's signatures on the several agreements were inscribed via an electronic document signature pad, which almost invariably will make a person's signature appear different from the same person's signature on a piece of paper.
The majority opinion ignores the well-settled "policy of the courts of this State to enforce contractual provisions for . . . selection of a forum for litigation" (Boss v American Express Fin. Advisors, Inc., 15 AD3d 306, 307 [1st Dept 2005], affd 6 NY3d 242 [2006], citing Koob v IDS Fin. Servs., 213 AD2d 26, 33 [1st Dept 1995]; Molino v Sagamore, 105 AD3d 922, 923 [2d Dept 2013]; Callanan Indus. v Sovereign Constr. Co., 44 AD2d 292, 296 [3d Dept 1974]; B&R Mgt. & Leasing Corp. v Triarc Rest. Group, Arby's, 269 AD2d 804 [4th Dept 2000]). It also ignores basic contract law that "parties to a contract may freely select a forum which will resolve any disputes over the interpretation or performance of the contract" (Brooke Group v JCH Syndicate 488, 87 NY2d 530, 534 [1996[*8]]; see CPLR 501 [FN2]).
In my opinion, the forum selection clause is binding on the parties to this litigation and should be so enforced.
Order, Supreme Court, New York County (John J. Kelley, J.), entered March 31, 2022, reversed, on the law, without costs, and the motion for change of venue denied.
Opinion by González, J. All concur except Webber, J.P. and Scarpulla, J. who dissent in a separate Opinion by Webber, J.P.
Webber, J.P., Gesmer, González, Scarpulla, Mendez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 10, 2023

Footnotes

Footnote 1:NYPH also opposed Dewitt's motion, arguing, among other things, that it was not a party to the alleged contract between Dewitt and decedent. NYPH did not appeal and is not a party to this appeal.

Footnote 2:Relying on this principle, the dissent cites a number of decisions in which we enforced forum selection clauses in nursing home admissions agreements. These cases do not compel enforcement of the clause at issue here, because, in each of the cited cases, it was undisputed that the decedent or decedent's representative had signed the agreement. The plaintiffs in those cases argued instead that enforcement of the clauses was against public policy (see Hendricks v Wayne Ctr. for Nursing & Rehabilitation, 194 AD3d 648 [1st Dept 2021]; Martin v Workmen's Circle Multicare Ctr., 171 AD3d 490 [1st Dept 2019]; Medina v Gold Crest Care Ctr., Inc., 117 AD3d 633 [1st Dept 2014]; Public Adm'r Bronx County v Montefiore Med. Ctr., 93 AD3d 620, 621 [1st Dept 2012]).

Footnote 3:The dissent asserts that plaintiff's affidavit does not suffice to raise an issue of fact as to the authenticity of the signatures. The dissent notes that plaintiff did not identify the document in which the exemplar appeared, nor give the date of the exemplar. Defendants did not submit reply papers challenging plaintiff's submissions, however. Such considerations are thus unpreserved (see Nadella v City of New York, 161 AD3d 412 [1st Dept 2018]; U.S. Bank N.A. v DLJ Mtge. Capital, Inc., 146 AD3d 603, 604 [1st Dept 2017]).

Footnote 4:The dissent asserts that, "[b]ased on the majority's reasoning, an affidavit from a representative with personal recollection of the events would be required in order to authenticate any agreement." This assertion perhaps overlooks our discussions of the admissibility of business records and of the ESRA's electronic signature authentication provisions.

Footnote 1:Based on the majority's reasoning, an affidavit from a representative with personal recollection of the events would be required in order to authenticate any agreement.

Footnote 2:CPLR 501 provides that a "written agreement fixing place of trial, made before an action is commenced, shall be enforced upon a motion for change of place of trial."