Knight v New York & Presbyt. Hosp. (2024 NY Slip Op 05870)

Knight v New York & Presbyt. Hosp.

2024 NY Slip Op 05870

Decided on November 25, 2024

Court of Appeals

Garcia

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 25, 2024

No. 92

[*1]James Knight, & c., Appellant,
v
The New York and Presbyterian Hospital et al., Defendants, Dewitt Rehabilitation and Nursing Center, & c., Respondent.

William T. O'Connell, for appellant.
Andrew D. Leftt, for respondent.

GARCIA, J.

Defendant Dewitt Rehabilitation and Nursing Center ("Dewitt") moved to enforce a contractual venue provision pursuant to Article 5 of the CPLR. In response, plaintiff contested the authenticity of the agreements containing the provision, claiming the signatures were forged. We agree that, when put in issue, Dewitt was required to establish the authenticity of the agreements but hold that Dewitt met its initial burden to do so, and that plaintiff failed to meet his corresponding burden to demonstrate forgery. We therefore reverse.
Plaintiff, decedent's son and Administrator of her estate, brought this negligence, medical malpractice, and wrongful death action in Supreme Court, New York County, against Dewitt and others not relevant to this appeal. Plaintiff alleged that decedent was a resident at Dewitt, a skilled nursing facility and rehabilitation center, in both February and March of 2019. Dewitt timely moved for an order transferring venue to Nassau County pursuant to a forum selection clause in two admission agreements electronically signed by decedent. In support of the motion, Dewitt submitted the agreements and an affidavit from Dewitt's director of admissions, Francesca Trimarchi. Plaintiff opposed with his own affirmation, asserting that Dewitt failed to meet its authentication burden because Trimarchi did not personally witness decedent sign the agreements and because Dewitt did not otherwise lay a proper [*2]foundation for the admission of the agreements as business records. Plaintiff claimed that the signatures on the admission agreements were not genuine and included an exemplar of decedent's purported handwritten signature for comparison.
Supreme Court granted Dewitt's motion, holding that "the party seeking to enforce a forum selection clause has the initial burden" to "show[] that the choice of venue provision is applicable and enforceable," but that "once it has satisfied that burden, the party opposing enforcement of the clause must establish that its enforcement would be unreasonable, unjust, or unconscionable" (2022 NY Slip Op 31048[U], *2 [Sup Ct, New York County 2022] [internal citations omitted]). The court concluded that Dewitt satisfied this "initial burden" and that plaintiff failed to raise a triable issue of fact as to the alleged forgery and ordered the case transferred to Supreme Court, Nassau County (id.).
The Appellate Division reversed (219 AD3d 75 [1st Dept 2023]), holding that the party seeking to enforce the provision must, "in the first instance," establish that the purported writing is authentic, which "may be effected by various means, including . . . by certificate of acknowledgment, by comparison of handwriting, or by the testimony of a person who witnessed the signing of the document" (id. at 78, citing Jerome Prince, Richardson on Evidence § 9-101 and Andreyeva v Haym Solomon Home for the Aged, LLC, 190 AD3d 801, 802 [2d Dept 2021] [other internal citations omitted]). According to the majority, Dewitt failed to adequately authenticate the admission agreements because Trimarchi "had no actual knowledge of how the agreements bearing decedent's name came to be signed," and the majority therefore held that the forum selection clause was unenforceable (id. at 79, citing Andreyeva, 190 AD3d at 802). The dissent would have placed the burden on plaintiff as the party challenging the venue provision to establish why it should not be enforced and, under that standard, concluded that plaintiff failed to meet this burden with respect to its forgery allegation (id. at 83-84 [Webber, J.P., dissenting]). The Appellate Division granted Dewitt leave to appeal and certified a question. We now reverse.
A contractual clause fixing venue "made before an action is commenced, shall be enforced upon a motion for change of place of trial," subject to limited exceptions not relevant here (CPLR 501; see CPLR 510 [2]; 514). Although forum selection clauses were "once disfavored by the courts," it has long been "recognized that parties to a contract may freely select a forum which will resolve any disputes over the interpretation or performance of the contract [] [and] [s]uch clauses are prima facie valid and enforceable unless shown by the resisting party to be unreasonable" (Brooke Group v JCH Syndicate 488, 87 NY2d 530, 534 [1996] [internal citations omitted]). Forum selection clauses may designate a jurisdiction, such as the federal or state court system, or the clause may designate a venue within the State, as was done here by specifying Nassau County as the proper venue (compare Hunt v Landers, 309 AD2d 900 [2d Dept 2003] [forum selection clause designating venue in a specific county in New York] with Boss v American Express Fin Advisors, Inc., 6 NY3d 242 [2006] [dismissal was appropriate where the parties agreed to litigate their claim in Minnesota]; see also Lowenbraun v McKeon, 98 AD3d 655, 656 [2d Dept 2012] [holding that a forum selection clause may warrant dismissal where it provides that disputes arising under the agreement be litigated in a different state or federal court]). "Venue presupposes that the court already has both subject matter and personal jurisdiction"; otherwise, dismissal on jurisdictional grounds would make the issue "academic" (David D. Siegel, NY Prac § 116 [6th ed 2024]). New York State supreme courts enjoy statewide jurisdiction, so if any county possesses jurisdiction over a case, "every [s]upreme [c]ourt in the state possesses such jurisdiction irrespective of county" (Vincent C. Alexander, Practice Commentaries, C501:1, citing Grune v Grenis, 171 AD2d 1070 [4th Dept 1991]; see also Benson v Eastern Bldg & Loan Assn., 174 NY 83, 86 [1903] [in New York "there is but one [s]upreme [c]ourt; the court when it sits in Onondaga county and when it sits in Oswego county is exactly the same court"]). As a result, while defects in jurisdiction or on forum non conveniens grounds may result in dismissal of an action, "[a] mere defect of venue . . . is not a dismissal ground in New York practice" but results only in a transfer to the correct venue (Siegel, NY Prac §§ 116, 117; Benson, 174 NY at 86-87); see also Lowenbraun, 98 AD3d at 656-657 [recognizing that "(i)mproper venue is not a jurisdictional defect requiring dismissal of the action"] [internal quotation marks and citations omitted]).
That said, the party moving for a change of venue under CPLR 501 is in effect seeking to enforce a contractual provision. For that reason, we agree with the majority below that, when put in issue, the proponent of the motion bears the initial burden to establish the authenticity of the writing for purposes of a motion to enforce a contractual venue provision (see Martens v Martens, 284 NY 363, 365 [1940]). This may be done through any of the recognized methods of authentication, including, but not limited to, the testimony of a witness who was present at the time of the signing, an admission of authenticity, proof of handwriting, and, as particularly relevant here, through [*3]circumstantial evidence (see Jerome Prince, Richardson on Evidence § 9-103; see also Young v Crescent Coffee, Inc., 222 AD3d 704, 705 [2d Dept 2023]).[FN1]
Dewitt met its burden by submitting the Trimarchi affirmation with the attached documents. Trimarchi stated that in February and March of 2019, she was employed as the director of admissions at Dewitt, and that she searched Dewitt's records for decedent's admission agreements. She affirmed that the agreements were kept and maintained in the ordinary course of Dewitt's business and, while Trimarchi had no personal recollection of decedent, she confirmed that "based upon the signature" of a Dewitt representative, the representative "was present when [decedent] signed" each agreement. Trimarchi then described the custom and practice of Dewitt representatives during the admission process, which involves the representative meeting "with each resident to review the admission paperwork," and determining whether the resident is "oriented," "responsive and conversing appropriately." If the representative determines that the resident is oriented, the representative reviews "every page of the [a]dmission [a]greement with the resident" and then "personally witnesses the resident execute all signature pages," either by hand or electronically. According to the affidavit, the representative's signature establishes that he or she "reviewed every page of the [agreement] with [decedent]."
The agreements that Dewitt submitted are dated February 12, 2019 and March 25, 2019. Decedent's signature appears on the last page of each, as well as on the attached "Medicare Signature on File Form," an "Assignment of Benefits" Form, and a "HIPAA Authorization Form." Decedent's initials appear on each page of the agreements and the various attachments. The first paragraph of each attached admission agreement contains bold text advising that "[t]he Resident hereby understand[s] and agree[s] that Admission to the Facility is conditioned upon the review and execution of this Agreement and related documents." Plaintiff's complaint confirms that decedent was indeed a resident at Dewitt in both February and March of 2019, when some of the allegedly negligent care occurred.
On this record, Dewitt came forward with sufficient circumstantial evidence of authenticity. Once that showing was made, the burden shifted to plaintiff to show why the venue selection provision should not be enforced (see Brooke Group, 87 NY3d at 534; see also Puleo v Shore View Ctr. for Rehabilitation and Health Care, 132 AD3d 651, 652 [2d Dept 2015]). To do so here, plaintiff was then required to produce "evidence sufficient to establish a genuine issue of fact regarding the authenticity" of decedent's signatures (Banco Popular N. Am. v Victory Taxi Management, Inc., 1 NY3d 381, 383 [2004]). Although an expert opinion is not required to raise an issue of fact as to forgery (see id. at 384), the movant must nevertheless offer "[s]omething more than a bald assertion," and in this regard conclusory or self-serving affidavits are inadequate (id.; see also Peyton v State of Newburgh, Inc., 14 AD3d 51, 54 [1st Dept 2004]). Plaintiff offered only an affidavit in which he claimed to be "familiar" with decedent's handwriting. Based on a summary of certain perceived inconsistencies in the signatures and initials on the agreements, plaintiff asserted that "whoever the person or people who signed and initialed these pages may have been, it was not my mother." Attached to the affirmation is an undated "exemplar" of what is purportedly decedent's signature, but no effort is made to establish that the exemplar represents decedent's signature at the relevant time. Furthermore, the exemplar is purportedly decedent's handwritten signature, and, as the Appellate Division majority noted, electronic signatures may naturally differ from handwritten ones (219 AD3d at 81). We therefore agree with Supreme Court that plaintiff's submission was insufficient to raise a question of fact.
In sum, when the authenticity of a document is put in issue on a motion to change venue pursuant to CPLR article 5, the party relying on the document has the initial burden of establishing its authenticity. Here, Dewitt met that burden. Plaintiff in turn failed to establish a triable issue of fact as to whether the signatures were forged.
Lastly, we note that the Appellate Division majority erred in relying on CPLR 4539 (b), titled "Reproductions of original," when it suggested that Dewitt should have submitted proof that the electronic signature software used by Dewitt had a protocol to prevent fraud (219 AD3d at 81). Even if this provision, found in CPLR article 45 governing admission of evidence, could be said to apply to the authentication of a contract submitted with a change of venue [*4]motion, it would be inapplicable here. CPLR 4539 (b) requires "authentica[tion] by competent testimony or affidavit which shall include the manner or method in which tampering or degradation of the reproduction is prevented" (id. [emphasis added]), but it does not apply where, as with the admission agreements, the documents at issue "were originally created in electronic form" (People v Kangas, 28 NY3d 984, 985-986 [2016] [in considering whether a record was admissible in a criminal trial, the Court held that "CPLR 4539 (b) applies only when a document that originally existed in hard copy form is scanned to store as a digital 'image' of the hard copy document, and then a 'reproduction' of the digital image is printed in the ordinary course of business"]). That the relevant agreements were signed electronically likewise has no bearing on authenticity, as such signatures are statutorily entitled to "the same validity and effect as . . . a signature affixed by hand" (State Technology Law § 304 [2]).
Accordingly, the order of the Appellate Division should be reversed, with costs, the order of Supreme Court, New York County, reinstated and the certified question answered in the negative.
Order reversed, with costs, order of Supreme Court, New York County, reinstated and certified question answered in the negative. Opinion by Judge Garcia. Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.
Decided November 25, 2024

Footnotes

Footnote 1: We note that because the admission agreements are not hearsay evidence, the business records exception is not relevant here (see Kepner-Tregoe, Inc. v Leadership Software, Inc. 12 F3d 527, 540 [5th Cir 1994] ["A contract is a verbal act (and) has legal reality independent of the truth of any statement contained in it"]; see also Service Alliance v Betesh, 52 Misc 3d 131 [A] [App Term, 2d Dept, 11th & 13th Jud Dists 2016] ["Contracts, or other documents having independent legal significance, are not hearsay"]).