47-05 Ctr. SPE L.L.C. v Hack (2025 NY Slip Op 25129)

[*1]

47-05 Ctr. SPE L.L.C. v Hack

2025 NY Slip Op 25129

Decided on May 28, 2025

Civil Court Of The City Of New York, Queens County

Schiff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on May 28, 2025
Civil Court of the City of New York, Queens County

47-05 Center SPE L.L.C., Petitioner-Landlord,

against
Narul A. Hack, et al., Respondents.

Index No. L&T 307151-24/QU

Tarter Krinsky Drogin LLP, Attorneys for Petitioner
Kenneth J. Glassman, Attorney for Respondent

Logan J. Schiff, J.

BACKGROUND AND PROCEDURAL HISTORY
Petitioner 47-05 Center SPE L.L.C. commenced this nonrenewal of an unregulated lease holdover proceeding against Respondent Narul A. Hack and his undertenants John Doe and Jane Doe upon filing the Petition and Notice of Petition on May 3, 2024, following service of a 90-day notice pursuant to Real Property Law ("RPL") 226-c by first class and certified mail on December 6, 2023. A copy of the notice and an affidavit of its service is annexed to the Petition. The notice stated that Respondent's tenancy, originally set to expire December 31, 2023, would not be renewed, and that Respondent would be entitled until March 11, 2023, a date exceeding 90 days from the notice, to vacate (emphasis added). The Petition pleads that the subject premises is exempt from the Rent Stabilization Law by virtue of its construction after January 1, 1974, and that the unit is exempt from the Good Cause Eviction Law ("GCEL"), enacted on April 20, 2024 (L 2024, ch 56, § 1, part HH), insofar as the predicate notice was served prior to the statute's effective date.
Respondent, through counsel, filed a pre-answer motion to dismiss on August 26, 2024, where he argued that the predicate notice was defective because it listed a vacate date of March 11, 2023, rather than March 11, 2024. By decision and order, dated October 15, 2024, Judge Clinton J. Guthrie, denied the motion, concluding that the obvious typographical error in the notice did not render it unreasonable under the attendant circumstances.
Respondent interposed an answer on October 28, 2024, alleging, in addition to a general denial, one affirmative defense, namely that Petitioner vitiated its nonrenewal notice by subsequently commencing a nonpayment proceeding on February 14, 2024, which was later discontinued on July 15, 2024, without the entry of a judgment. Respondent subsequently moved for summary judgment on this basis. By decision and order, dated December 11, 2024, Judge Guthrie denied the motion, concluding that the commencement and subsequent discontinuance of a nonpayment proceeding, filed before the final vacate date in the nonrenewal notice, and only seeking rent due under the parties' last lease, did not vitiate the notice or "signify the ratification [*2]of a new tenancy" (NYSECF 30).
This court conduced a one-day trial on April 22, 2025.
THE TRIAL RECORD
The sole witness to testify for either side was Heyward Shine, an employee of the managing agent. During his testimony, the court admitted into evidence a certified assignment of rents, a certified multiple dwelling registration, and a copy of the parties' last fully executed renewal lease, renewing the tenancy for the period of January 1, 2023, through December 31, 2023, at a monthly rent of $4,250. Mr. Shine testified that Petitioner authorized service of the predicate nonrenewal notice and the Petition, and that the lease between the parties, Docusigned by Respondent, was a document made and retained by Petitioner in the ordinary course of its business. The witness further testified that Respondent has not paid any rent since the case was commenced in May 2024, for a total of twenty-three months outstanding use and occupancy pendente lite as of April 2025. Following the testimony, Petitioner rested and sought a possessory judgment and a money judgment for all use and occupancy accrued since commencement of the proceeding, albeit without seeking to amend the Petition, which sought use and occupancy only through April 2024
Although Respondent was present at the trial, Respondent's counsel chose to call no witnesses. Instead, after Petitioner rested, Respondent's counsel rested and made an oral motion to dismiss based on Petitioner's failure to offer proof that Petitioner, a Delaware limited liability company, obtained a certificate of authority to do business in New York pursuant to New York Limited Liability Company Law § 808.
The court afforded both parties until May 14, 2025, to submit simultaneous written summations, each of which was timely filed.
ANALYSIS
Petitioner proved its prima facie case upon the testimony of its witness, an employee of the managing agent, and the admission of the parties' last renewal lease, expiring December 31, 2023, and upon proof of service of a facially sufficient nonrenewal notice pursuant to RPL 226-c in accordance with the provisions of the lease (see Frischer v Goldner, 76 Misc 3d 1226 [Civ Ct, Kings Co 2022]).[FN1]

To the extent Respondent previously argued in an unsuccessful motion to dismiss, and reiterates in summation, that Petitioner's nonrenewal notice is facially defective because it purported to not renew and terminate the parties' tenancy as of March 11, 2023, rather than March 11, 2024, this argument was rejected on the merits by Judge Guthrie in his October 15, 2024 decision. This constitutes the law of the case and is not appropriately revisited (see Wolf Props. Assoc., L.P. v Castle Restoration, LLC, 174 AD3d 838 [2d Dept 2019]). In any event, the "obvious typographical error" in the notice did not render it unreasonable under the attendant circumstances or prejudice respondent in any way in framing a defense to the underlying proceeding (Oxford Towers Co., LLC v Leites, 41 AD3d 144 [1st Dept 2007]; see also Kew Gardens Portfolio Holdings, LLC v Bucheli, 130 NYS3d 878 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2020]; Marine Terrace v Kesoglides, 24 Misc 3d 35 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2009]; Hughes v. Lenox Hill Hosp., 226 AD2d 4, 18 [1st Dept 1996], lv denied 90 NY2d 829 [1997]).
Contrary to Respondent's contention, it was not necessary for Petitioner to recognize or otherwise validate Respondent's Docusigned electronic signature on the parties' last lease to admit it into evidence. A lease is a type of contract that must be authenticated prior to admission (see Daper Realty, Inc. v Pizzimenti, 234 AD3d 405 [1st Dept 2025]). While identifying the signature of the party being bound is the most common method of admission (see e.g. Tuscan Realty Corp v O'Neill, 189 Misc 2d 349 [App Term. 2d Dept, 2d and 11th Jud Dists 2001]), a lease may also be authenticated through "other circumstantial evidence" (Young v Crescent Coffee, Inc., 222 AD3d 704, 705 [2d Dept 2023]). This can include evidence the lease is a properly maintained business record of the landlord or its predecessor-in-interest (Daper Realty, Inc. v Pizzimenti, 234 AD3d 405, 406 [1st Dept 2025] ["The landlord's witness established that he was sufficiently familiar with the lease in the course of his employment to authenticate it as a business record, and he competently testified to his company's record keeping proceedings."]; DeLeon v Port Authority of New York and New Jersey, 306 AD2d 146, 146 [1st Dept 2003] ["Here, defendant's lease administrator had sufficient knowledge with regard to these leases since they were business records relating to her employment and she was familiar with defendant's record keeping procedures. In any event, merely attaching the subject leases to the attorney's affirmation was sufficient to admit the leases."]; Tuscan Realty Corp v O'Neill, 189 Misc 2d 349 [App Term, 2d Dept, 2d and 11th Jud Dists 2001] [lease of former owner properly admitted as a business record]).
Nor does the fact that Respondent electronically signed the lease in question bar its admission through circumstantial evidence as a business record. An electronically signed contact has the force and effect of an original writing and is subject to the same evidentiary rules for admission (see State Technology Law §§ 304 and 306). In Knight v New York & Presbyt. Hosp, 219 AD3d 75 [1st Dept 2023], a divided Appellate Division held that a Docusigned nursing home admission agreement, signed by a deceased patient, could not be admitted in connection with a motion to change venue where the affidavit of the employee purporting to authenticate the agreement "did not describe any protocols governing the use of Docusign" or otherwise demonstrate personal knowledge related to the execution of the specific agreement. The Court of Appeals reversed, concluding that there was "sufficient circumstantial evidence of authenticity" [*3]through, among other things, the witness's affirmation that the records were kept and maintained in the ordinary course of business and were otherwise reliable by virtue of the nursing home's procedures for ensuring the residents had the capacity to sign such agreements (Knight v New York & Presbyt. Hosp, 42 NY3d 699 [2024]).
To be clear, the authentication of a lease as a business record is not premised on the business records exception to the rule against consideration of hearsay. A lease, as with other contracts, is not an out of court statement but rather "a verbal act [that has a] legal reality independent of the truth of any statement contained in it" where the rules pertaining to the use of hearsay have no application (id. at n1 [internal citation and quotation omitted]; see also Service Alliance v Betesh, 52 Misc 3d 131 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2016]). Rather, admission of a lease on the basis of its constituting a business record appears to be derived from the common sense conclusion that, where a landlord or its agent testifies that it is its regular business practice to execute a lease prior to conveying possession to a tenant or upon expiration of the preceding lease, and where the landlord has in its custody a fully executed lease maintained in the ordinary course of its business and bearing the name of the same individual who is presently in actual possession of the demised premises, the overwhelming circumstantial evidence usually points to such a lease being "what it purports to be," namely a genuine contract (DeLeon v Port Authority of New York and New Jersey, 306 AD2d 146 [1st Dept 2003]). The respondent in such a scenario can, of course, testify in rebuttal that his signature on the lease is a forgery. If unrebutted, such testimony could well undermine the weight of the lease as evidence of a binding contract; however, such a theoretical concern is more appropriately treated as an affirmative defense than a threshold bar to the lease's consideration as evidence by the court.
Here, the testimony of Petitioner's witness that the countersigned renewal lease bearing Respondent's Docusigned signature was made and retained in the ordinary course of Petitioner's business, and that it is Petitioner's practice to offer renewal leases for execution via Docusign, which requires the tenant to provide their email address and other identifying information prior to execution, was more than sufficient to admit the parties' last renewal lease as a business record, notwithstanding the witness's unfamiliarity with Respondent's signature or any specific details related to when and how Respondent signed the document. Furthermore, Respondent did not give the court any reason to doubt the reliability of this lease, as he not only failed to raise any such defense in his answer or testify in rebuttal, he admitted to executing the renewal lease in a sworn affidavit in support of his motion for summary judgment (see NYSCEF 21), an opposing party admission that is appropriately considered by this court sua sponte pursuant to CPLR 409(b) ["The court shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised."] [emphasis added]).
Also unavailing is Respondent's objection to the admission of Petitioner's nonrenewal notice and the attendant affidavit of its service. To the extent Respondent argues that Petitioner's witness needed to testify to his personal familiarity with the service of the notice, this argument fails because Respondent did not challenge the service of notice in his answer and therefore waived the defense (see West Haverstraw Preserv. LP v Diaz, 58 Misc 3d 150 [App Term, 2d Dept, 9th & 10th Jud Dists 2018]; Marmon Realty Group, LLC v Khalil, 72 Misc 3d 136 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]; City of New York v Jones, 1992 NY Lexis 706 [App Term, 2d Dept, 2d & 11th Jud Dists 1992]). While proof of service of a facially sufficient notice was part of Petitioner's prima facie case (see 1646 Union v Simpson, 62 Misc 3d 142 [App Term, 2d Dept, 2d, 11th &13th Jud Dists 2019]; Mautner-Glick Corp. v. Glazer, 148 AD3d 515, [*4]516 [1st Dept 2017]; W54-7 LLC v. Schick, 14 Misc 3d 49, 50 [App Term, 1st Dept 2006]), in the absence of a credible challenge to service in a responsive pleading or at trial, Petitioner was entitled to rely on its facially sufficient affidavit of service as prima facie proof of service (see George Douleveris & Son, Inc. v P.J. 37 Food Corp., 39 Misc 3d 1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013]; Citi Land Servs., LLC v McDowell, 30 Misc 3d 145 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011); Engel v Lichterman, 62 NY2d 943 [1984]).
Nor was Petitioner's foundational witness required to testify as to his personal knowledge of the creation of the nonrenewal notice, or otherwise authenticate the signature on the notice, signed by Petitioner's authorized agent, to admit it into evidence. A notice of nonrenewal, like a contract, is a type of written verbal act that must be authenticated prior to its admission into evidence (see LPP Mtge. Inc. v Cruz, 81 Misc 3d 1242 [Civ Ct, Queens Co 2024]). However, unlike a contract, which is only effective upon a meeting of the minds, normally demonstrated by confirming the signature of the party being bound, a notice of nonrenewal is a unilateral act that typically need only to emanate from the party in interest to constitute an authentic, written manifestation of that party's legal intent (see Bannerman v Hughes, 188 NYS 410 [App Term, 1st Dept 1921]). Barring a specific lease provision, there is no requirement that such a notice be issued or signed by a particular employee (see Port Royal Owners Corp. v Navy Beach Rest. Group, LLC, 56 Misc 3d 56 [App Term, 2d Dept, 9th & 10th Jud Dists 2017], citing QPII-143-45 Sanford Ave., LLC v Spinner, 34 Misc 3d 14 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011], affd 108 AD3d 558 [2d 2013]). In fact, as with other predicate notices, such as 14-day rent demands, there appears to be no legal requirement that a nonrenewal or termination notice be signed at all, absent a specific lease requirement, rendering the common practice of signing such notices harmless surplusage (see RPL §§ 226-c and 232-a, RPAPL 711(1) and (2); 54-56 Mgt. Corp v MTA Fine Arts Co., Inc., 76 Misc 3d 136 [App Term, 1st Dept 2022]). To constitute a valid act, a nonrenewal or termination notice need only be issued by or on behalf of the relevant party in interest, contain the requisite language required by law to accomplish the act of nonrenewal or termination, and be timely and properly served on the opposing party (see Port Royal Owners Corp. v Navy Beach Rest. Group, LLC, 56 Misc 3d 56; Bannerman v Hughes, 188 NYS 410 [App Term, 1st Dept 1921]).
Given the minimal legal requirements for a valid nonrenewal notice, which can normally be gleaned from the face of the document and its accompanying affidavit of service, this court is of the opinion that such a notice can generally be treated as patently trustworthy and self-authenticating even in the absence of a qualifying witness (see Elkaim v Elkaim, 176 AD2d 116 [1st Dept 1991] [documents that are not inherently "self-proving" records may nonetheless be admitted on judicial notice where there is sufficient indicia of reliability predicated on "the nature of the records observed by the court . . . "]). In other words, a properly served nonrenewal notice, emanating from and served on behalf of the party actively litigating the proceeding, for which the notice acts as the condition precedent to commencement, and lacking any irregularity on its face that might cast doubt on its provenance, can be presumed to constitute the genuine verbal act of the nonrenewing party and admitted on judicial notice for this purpose.[FN2]
The admission of the notice would not bar the opposing party from taking issue with whether it was [*5]drafted or authorized by the correct party; however, such a defense, effectively challenging the standing or capacity of the issuer or server of the notice, is more appropriately treated as an affirmative defense rather than a barrier to admission (see Chinuch v Congregation Lubavitch, Inc., 82 Misc 3d 29 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2024] [respondents waived the right to challenge whether 10-day notices to quit were defective because not signed by the persons authorized to do so where the defense was not raised in their answer or at trial and only brought up in a post-trial brief]; 350 Cabrini Owners Corp. v Merkel, 69 Misc 3d [App Term, 1st Dept 2020]; cf. LPP Mtge. Inc. v Cruz, 81 Misc 3d 1242 [Civ Ct, Queens Co 2024] [predicate notice signed and issued by a third party on behalf of a landlord could not be admitted into evidence on judicial notice without a qualifying witness]).[FN3]
Here, the notice of nonrenewal, emanating from and issued on behalf of Petitioner, and timely served as established by the unchallenged affidavit of service, meets the requirements for admission without a qualifying witness as an inherently reliable, self-authenticating document.[FN4]

Once Petitioner established its prima facie case, it was incumbent on Respondent to demonstrate a viable affirmative defense to defeat Petitioner's claim to possession. The sole affirmative defense Respondent raised in his answer asserts that Petitioner vitiated its termination notice by its subsequent commencement of a nonpayment prior to the vacate date in the nonrenewal notice seeking rent due under the parties' last lease, which was discontinued before entry of a judgment. This defense, rejected by the Judge Guthrie in his decision denying Respondent's motion for summary judgment, was effectively abandoned at trial and is unavailing in any event considering the Appellate Term's recent holding in Pimor Assoc., LLC v Delvalle, 85 Misc 3d 128 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2025]).
The only other affirmative defense asserted by Respondent at trial was its claim, raised for the first time in his post-trial summation, that Petitioner failed to demonstrate that, as a foreign limited liability company, it complied with New York Limited Liability Company Law § 808 in obtaining a certification authorizing it do business in New York. Such a defense, challenging Petitioner's capacity to commence a legal proceeding, was waived upon Respondent's failure to interpose the defense in his answer (see Kapitus Servicing, Inc. v Epazz, Inc., 231 AD3d 408 [1st Dept 2024]; Jacin Invs.Corp. N.V. v Von Gogt, 196 NYS 3d [App Term, 1st Dept 2023]; Rimberg v Horowitz, 206 AD3d 832 [2d Dept 2022]; Caring People Mgt. Servs., LLC v Assistcare Home Health Servs. LLC, 162 AD3d 509 [1st Dept 2018]). Had Respondent raised the defense in rebuttal, prior to summation, the court could have considered an oral motion to amend the pleadings to conform to the proof insofar as a waived affirmative defense can generally be revived in the absence of prejudice, even during a trial (see Deutsche [*6]Bank Natl. Trust Co. v Groder, 218 AD3d 542 [2d Dept 2023]); Four Thirty Realty LLC v Kamal, 83 Misc 3d 138 [App Term, 1st Dept 2024]; Thanasoulis v Shapiro, 81 Misc 3d 132 [App Term, 1st Dept 2023]). However, in such a case, Petitioner, who claims in its post-trial memorandum of law that it is duly authorized to do business in New York and merely did not offer such evidence in the absence of a challenge to its authority, would have had the opportunity to demonstrate its capacity via rebuttal. Instead, Respondent attempted to ambush Petitioner at the conclusion of trial with an unpreserved, affirmative defense, a tactical stratagem that this court will not condone.
Accordingly, for the foregoing reasons, the court finds that Petitioner has demonstrated its entitlement to possession and awards a final possessory judgment as against all Respondents. The warrant shall issue forthwith, with execution stayed through June 16, 2025. Upon failure to timely vacate, a marshal's notice is to be served as per law. The earliest execution date is June 17, 2025.
Petitioner is not entitled to a concomitant money judgment for outstanding use and occupancy for lack of proof. While Petitioner sought use and occupancy in its Petition, Notice of Petition, and in summation, and would normally be entitled to such an award (see RPAPL 741(5); Tzifil Realty Corp v Mazrekaj, 2025 NY Slip Op 25034 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2025]), Petitioner never sought to amend the Petition to date, and is therefore only entitled to use and occupancy for the period sought in the Petition prior to amendment, in this case through April 2024 (see M. H. Thomasmith Co. v Nicola Design Studio, Inc., 83 Misc 3d 135 [App Term, 2d Dept, 9th & 10th Jud Dists 2024]). However, no competent evidence was offered to substantiate any pre-Petition arrears, as Petitioner did not move a rent ledger into evidence, and its witness only testified that Respondent has paid no rent in the months after filing from May 2024 to April 2025. Accordingly, as the court cannot determine what, if any, amount was due as of commencement, Petitioner's claim for use and occupancy is dismissed after trial. This dismissal is explicitly without prejudice to commencement of a plenary action for any funds owed for rent or use and occupancy as this claim, ancillary to the core relief of possession in a holdover proceeding, was not meaningfully litigated by either party (see CPLR 5013; WHGA Mannie L. Wilson Towers L.P. v Singletary, 78 Misc 3d 1233 [Civ Ct, New York Co 2023]).
CONCLUSION
For the foregoing reasons, Petitioner is awarded a final judgment of possession against all Respondents. The warrant shall issue forthwith, with an earliest execution date of June 17, 2025. No further non-military affidavit is required. All claims for ancillary monetary relief for outstanding use and occupancy are preserved and severed for a plenary action.
This constitutes the decision and order of the court
Dated: May 28, 2025
Queens, New York
Hon. Logan J. Schiff, J.H.C.

Footnotes

Footnote 1:Although not argued by either party, the court finds that it was incumbent on Petitioner to plead and establish that the subject premises was not covered by the Good Cause Eviction Law (GCEL), insofar as the proceeding was commenced upon filing on May 3, 2024, after the April 20, 2024, effective date of the statute (see TD Equities, Inc. v Cribbs, 2025 NY Slip Op 50775 [ Civ Ct, Queens Co 2025]; Queens St. Albans Holdings, LLC v Sands, 86 Misc 3d 275 [Civ Ct, Queens Co 2024]). Nonetheless, as GCEL exempts buildings in which a certificate of occupancy has been issued after January 1, 2009 (see RPL 214(8), and it is apparent from the certificate of occupancy available on the Department of Buildings' website, for which this court takes judicial notice (see King-Knights v Hall, 83 Misc 3d 130 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2024]), that a certificate of occupancy for this recently constructed building was issued in 2012, on the court's own motion, the Petition is deemed amended to plead exemption from GCEL on the basis of RPL 214(8) (see 17th Holdings LLC v Rivera, 195 Misc 2d 531 [App Term, 2d Dept, 2d & 11th Jud Dists 2002]).

Footnote 2:The testimony of a witness with personal knowledge that the drafting and service of the notice was authorized by the proper party in interest will further bolster the authenticity of the notice.

Footnote 3:Even a predicate notice that was not drafted or authorized by the petitioner, arguably would still be effective so long as it was ratified prior to its service, as the notice only becomes a valid verbal act upon service. Furthermore, a business is entitled to rely upon and incorporate the business records of another entity into its business practice (see U.S. Bank Trust, N.A. v Atedgi, 236 AD3d 707 [2d Dept 2025]).

Footnote 4:Even were the document not self-authenticating, the testimony of Petitioner's witness that his office authorized the notice was sufficient to authenticate the document notwithstanding his lack of intimate knowledge as to the creation and service of this specific notice.